UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| QBE SYNDICATE 1036 | § § § |
| v. | § CIVIL ACTION NO. 6:20-CV-554 |
| COMPASS MINERALS LOUISIANA INC. | § § § § § |

## COMPLAINT FOR DECLARATORY JUDGMENT

This Complaint for Declaratory Judgment is filed by Plaintiff QBE Syndicate 1036 ("Plaintiff" or "QBE") against Defendant Compass Minerals Louisiana Inc. ("Defendant" or "Compass").

## PRELIMINARY STATEMENT

1. This is an action for declaratory judgment brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure to determine whether QBE owes any duties to Compass under certain insurance policies described below that QBE issued to MC Electric, LLC ("MC Electric") and Fire & Safety Specialists, Inc. ("FSS").

2. This dispute arises out of a fatal accident that occurred at Compass's Cote Blanch salt mine located on Cote Blanch Island in St. Mary Parish, Louisiana, on August 15, 2019, when an electrician employed by MC Electric contacted an energized electrical circuit while attempting to install a new circuit for the fire suppression system at the salt mine. As a result of that fatal accident, the decedent's representatives filed a wrongful death and survival lawsuit against Compass and FSS, entitled *Yarbrough, et al. v. Compass Minerals Louisiana, Inc., et al.*, pending in the 16th Judicial District Court for the Parish of St. Mary, State of Louisiana, No.

134463 (the "*Yarbrough* Lawsuit").  The original petition for damages and first supplemental and amending petition for damages filed in the *Yarbrough* Lawsuit are attached hereto as "Exhibit A."

3. On March 17, 2020, Compass tendered the *Yarbrough* Lawsuit to QBE through separate letters to MC Electric and FSS (collectively, the "Insureds").  Compass seeks defense, indemnity, and coverage from QBE pursuant to certain indemnification and additional insured provisions contained in nearly identical Purchase Orders that Compass issued to MC Electric and FSS for services at the salt mine.

4. As set forth in greater detail below, QBE seeks a declaration that the indemnification and additional insured provisions in the Purchase Orders are null, void, and unenforceable under the Louisiana Oilfield Anti-Indemnity Act, La. R.S. § 9:2780 (the "LOAIA"), such that QBE owes no duties to Compass whatsoever in connection with the *Yarbrough* Lawsuit.

**PARTIES**

5. Defendant Compass Minerals Louisiana Inc. is a Delaware corporation with its principal place of business at 9900 West 109th Street, Suite 100, Overland Park, Kansas 66210.  Accordingly, for purposes of diversity jurisdiction, Compass is a citizen of Delaware and Kansas.

6. Plaintiff QBE Syndicate 1036 is an underwriting syndicate at Lloyd's, London.  QBE Underwriting Limited ("QUL") is its managing agent and sole capital provider.  QUL is incorporated in and has its principle place of business in the United Kingdom.  The ultimate parent of QUL is QBE Insurance Group Limited, an Australian company with its

principle place of business in Australia.  Accordingly, for purposes of diversity jurisdiction, QBE is a citizen of the United Kingdom and Australia.

## JURISDICTION

7. Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332(a)(2) because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and there is complete diversity of citizenship as between Plaintiff and Defendant.

8. Compass conducts business in Louisiana, including at its Cote Blanch salt mine located on Cote Blanch Island in St. Mary Parish, Louisiana, and therefore is subject to the personal jurisdiction of this Court.

## VENUE

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because a substantial part of the acts or omissions giving rise to this matter took place in this District.

## FACTUAL BACKGROUND

10. Compass is part of a multi-national mineral company that owns and operates multiple salt mines in North America and the United Kingdom, including the Cote Blanch salt mine located on Cote Blanch Island in St. Mary Parish, Louisiana.

11. Salt is a mineral.

12. According to Compass's own website, Compass employs the "drill-and-blast" mining method/technique at the Cote Blanch salt mine, which Compass describes as follows: "The drill-and-blast mining method begins by cutting into the rock salt face using specialized equipment.  We then drill holes into the face and use explosives to break the salt into large rocks. Front-end loaders and trucks load and haul the salt to a crusher where it is reduced in size, loaded onto a conveyor belt and transported to a mill.  The mill screens and crushes the rock salt to the

customary size before the salt is hoisted to the surface." *See* Compass Minerals, How We Do It, *at* https://www.compassminerals.com/what-we-do/production/ (last visited May 1, 2020).

13. QBE issued a commercial general liability insurance policy to FSS bearing the Policy Number 19CGLN12380, for the period of May 28, 2019 to May 28, 2020 (the "FSS Policy"). A copy of the FSS Policy is attached hereto as Exhibit "B."

14. QBE issued a commercial general liability insurance policy to MC Electric bearing the Policy Number 18CGLN12138, for the period of December 31, 2018 to December 31, 2019 (the "MC Electric Policy"). A copy of the MC Electric Policy is attached hereto as Exhibit "C." (Collectively, the FSS Policy and the MC Electric Policy are referred to as the "Policies").

15. The Policies were issued to FSS and MC Electric. Compass did not pay the premiums for the Policies.

16. On August 15, 2019, Shawn Clements ("Clements") died by electrocution while working at Compass's Cote Blanch salt mine. As a result of Clements' death, his representatives filed the *Yarbrough* Lawsuit on December 9, 2019.

17. The *Yarbrough* Lawsuit is a survival and wrongful death action and alleges that Clements' employer, MC Electric, was hired by Compass to perform electrical work at Compass's salt mine. The *Yarbrough* Lawsuit further alleges that in conjunction with that work, Clements was advised by a Compass electrician and a FSS technician that the fire suppression system at the relevant portion of the mine had been de-energized, when it in fact was not de-energized. The *Yarbrough* Lawsuit alleges that Clements suffered severe physical and emotional pain from his injuries before he died, and that his injuries and death are a result of Compass's and FSS's negligence. In light of the facts alleged in the *Yarbrough* Lawsuit, there can be no

doubt that the survival and wrongful death claims asserted therein seek more than $75,000.00 in damages from Compass.

18. On March 17, 2020, Compass tendered the *Yarbrough* Lawsuit to MC Electric under an August 1, 2019 Purchase Order for underground labor support at the salt mine, and specifically wrote that it "ask[s] this matter be forwarded to your general liability insurance company for their handling."  A copy of the Purchase Order to MC Electric is attached hereto as Exhibit "D," and a copy of Compass's tender to MC Electric is attached hereto as Exhibit "E."

19. Also on March 17, 2020, Compass separately tendered the *Yarbrough* Lawsuit to FSS under an August 8, 2019 Purchase Order for the inspection of a fire suppression system at the mine, and specifically wrote that it "ask[s] this matter be forwarded to your general liability insurance company for their handling."  A copy of the Purchase Order to FSS is attached hereto as Exhibit "F," and a copy of Compass's tender to FSS is attached hereto as Exhibit "G."

20. Per the above-described tenders, Compass seeks from QBE defense, indemnity, and coverage under the Policies for the *Yarbrough* Lawsuit.

21. In both tenders, Compass relies upon the terms of identical indemnification provisions located in paragraph 6 of the Terms and Conditions of Purchase section of each Purchase Order (the "Indemnification Provision").  The Indemnification Provision states:

> INDEMNIFICATION.  TO THE EXTENT PERMITTED BY APPLICABLE LAW, SELLER SHALL INDEMNIFY, HOLD HARMLESS AND DEFEND COMPANY AND ITS AFFILIATE AND THEIR RESPECTIVE EMPLOYEES, OFFICERS, DIRECTORS, SHAREHOLDERS, INURERS, AGENTS AND REPRESENTATIVES (COLLECTIVELY, THE INDEMNIFIED PARTIES), FROM ALL CLAIMS, LIABILITIES, DAMAGES, SUITS, PROCEEDINGS, COSTS AND EXPENSES (INCLUDING REASONABLE ATTORNEYS FEES) (COLLECTIVELY, THE LOSSES), FOR ANY DAMAGE, INJURY, DEATH, LOSS OR DESTRUCTION OF ANY KIND RELATING TO OR ARISING OUT OF THE PERFORMANCE OR BREACH OF THIS AGREEMENT, INCLUDING WITHOUT LIMITATION, LOSS OR DAMAGE TO ANY PROPERTY OR INJURY TO OR DEATH OF ANY PERSON (INCLUDING,

WITHOUT LIMITATION, SELLER, ITS EMPLOYEES, AND ITS AGENTS), WHETHER ARISING AS A WORKERS COMPENSATION CLAIM OR UNDER THEORIES OF NEGLIGENCE, TORT, STRICT LIABILITY, INTENTIONAL MISCONDUCT, OR FAULT OF ANY KIND.  THE PARTIES AGREE THAT THE FOREGOING INDEMNIFICATION SHALL APPLY TO LOSSES INCURRED BY THE PARTIES IN CONNECTION WITH CLAIMS BETWEEN THEM.

22. In seeking defense, indemnity, and coverage from QBE, Compass also relies upon the terms of identical additional insured provisions located in paragraph 7 of the Terms and Conditions of Purchase section of each Purchase Order (the "Additional Insured Provision"). The Additional Insured Provision states in pertinent part:

> INSURANCE. . . .  In advance of any work in connection with this Agreement and on Company's request, Seller shall provide Company with a certificate of insurance naming Company as an additional insured on each of the policies required by this Agreement (other than Worker's Compensation and Employer's Liability). . . .

23. As detailed below, the foregoing Indemnification Provision and Additional Insured Provision are null, void, and unenforceable under the Louisiana Oilfield Anti-Indemnity Act (the "LOAIA"), La. R.S. § 9:2780, which provides in pertinent part as follows (emphasis added):

> (A) The legislature finds that an inequity is foisted on certain contractors and their employees by the defense or indemnity provisions, either or both, contained in some agreements pertaining to wells for oil, gas, or water, or <u>drilling for minerals</u> which occur in a solid, liquid, gaseous, or other state, to the extent those provisions apply to death or bodily injury to persons.  It is the intent of the legislature by this Section to declare null and void and against public policy of the state of Louisiana any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee.
>
> (B) Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or <u>drilling for minerals</u> which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee

against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.

(C) The term "agreement," as it pertains to a well for oil, gas, or water, or <u>drilling for minerals</u> which occur in a solid, liquid, gaseous, or other state, as used in this Section, means any agreement or understanding, written or oral, concerning any operations related to the exploration, development, production, or transportation of oil, gas, or water, or <u>drilling for minerals</u> which occur in a solid, liquid, gaseous, or other state . . . or otherwise rendering services in connection with any mine shaft, drift, or other structure intended for use in the exploration for or production of any mineral, or any agreement to perform any portion of any such work or services or any act collateral thereto. . . .

. . .

(G) Any provision in any agreement arising out of the operations, services, or activities listed in Subsection C of this Section of the Louisiana Revised Statutes of 1950 which requires waivers of subrogation, additional named insured endorsements, or any other form of insurance protection which would frustrate or circumvent the provisions of this Section, shall be null and void and of no force and effect.

24. Because the Purchase Orders are "agreements" "pertaining to . . . drilling for minerals," the Indemnification Provision in the Purchase Orders is null, void, and unenforceable under Subsection B of the LOAIA, and as a result the Additional Insured Provision in the Purchase Orders is null and void and of no force and effect under Subsection G of the LOAIA. Thus, QBE owes no duties to Compass whatsoever in connection with the *Yarbrough* Lawsuit.

## COUNT I – DECLARATORY JUDGMENT

25. QBE hereby incorporates paragraphs 1 through 24 as if copied *in extenso*.

26. An actual and justiciable controversy exists between Compass and QBE regarding the *Yarbrough* Lawsuit that is ripe for adjudication. The dispute between the parties is by no means hypothetical, but is rather very real and involves potentially significant liability. This controversy is of sufficient immediacy, reality, and ripeness to warrant the issuance of a

- 7 -

declaratory judgment at this time so the parties can avoid further uncertainty and disputes as to their respective rights, duties, and obligations.  Pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, this Court is authorized to resolve this dispute and provide the declaratory relief requested herein.

27. QBE seeks a declaration that because the Purchase Orders issued by Compass to MC Electric and FSS are "agreements" "pertaining to . . . drilling for minerals," the Indemnification Provision in the Purchase Orders is null, void, and unenforceable under Subsection B of the LOAIA, and as a result the Additional Insured Provision in the Purchase Orders is null and void and of no force and effect under Subsection G of the LOAIA.  Thus, the Court should declare that QBE owes no duties to Compass whatsoever in connection with the *Yarbrough* Lawsuit.

28. In connection with the declaratory relief sought above, the Court should also declare that (i) the choice-of-law clause in the Purchase Orders calling for the application of Delaware law is also null, void, and unenforceable as contrary to the public policy of Louisiana because it seeks to circumvent the LOAIA, and (ii) Compass does not meet the exception to the LOAIA recognized by the United States Court of Appeals for the Fifth Circuit in *Marcel v. Placid Oil Co.*, 11 F.3d 563 (5th Cir. 1994).

29. QBE pleads all other conditions, terms, limitations, definitions, and exclusions of the Policies which may be found to be applicable as its investigation of this matter continues, and QBE reserves the right to amend this Complaint for Declaratory Judgment as additional and/or more specific information becomes available.

- 9 -

## PRAYER FOR RELIEF

WHEREFORE, QBE prays that after due proceedings are had there be judgment in its favor and against defendant Compass Minerals Louisiana Inc., as follows:

(a) declaring that the Indemnification Provision and Additional Insured Provision in the Purchase Orders that Compass issued to MC Electric and FSS are null, void, and unenforceable under the LOAIA and, therefore, that QBE owes no duties to Compass whatsoever in connection with the *Yarbrough* Lawsuit;

(b) declaring that the choice-of-law clause in the Purchase Orders calling for the application of Delaware law is also null, void, and unenforceable as contrary to the public policy of Louisiana because it seeks to circumvent the LOAIA;

(c) declaring that Compass does not meet the exception to the LOAIA recognized by the United States Court of Appeals for the Fifth Circuit in *Marcel v. Placid Oil Co.*, 11 F.3d 563 (5th Cir. 1994); and

(d) awarding QBE all other legal and equitable relief deemed appropriate under the circumstances.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:   */s/ Jeremy T. Grabill*
      Jeremy T. Grabill (Bar #34924)
      Lindsay J. Calhoun (Bar #35070)
      Ashley W. Hinton (Bar #35171)
      Canal Place | 365 Canal Street, Suite 2000
      New Orleans, Louisiana 70130-6534
      Telephone: 504-566-1311
      Telecopier: 504-568-9130
      Email: jeremy.grabill@phelps.com
            lindsay.calhoun@phelps.com
            ashley.hinton@phelps.com

**ATTORNEYS FOR QBE SYNDICATE 1036**