**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | | |
|---|---|---|
| **QBE SYNDICATE 1036** | § | **CIVIL ACTION NO. 6:20-CV-00554** |
| | § | |
| **v.** | § | **JUDGE SUMMERHAYS** |
| | § | |
| **COMPASS MINERALS LOUISIANA INC.** | § | **MAGISTRATE JUDGE HANNA** |
| | § | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**
**PURSUANT TO THE ABSTENTION DOCTRINE FILED BY DEFENDANT**

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................i

TABLE OF AUTHORITIES .........................................................................................ii

INTRODUCTION ........................................................................................................ 1

BACKGROUND ......................................................................................................... 3

LAW AND ARGUMENT ........................................................................................... 5

    I.      Legal Standard ........................................................................................ 5

    II.     The Court Should Not Abstain From Adjudicating This Declaratory Action............................................................................................................ 7

          a.     Judicial Economy Is Furthered by Deciding this Declaratory Judgment Action ................................................................. 8

                i.     This controversy can be decided on the pleadings............................. 8

                ii.    The Court need not adjudicate Compass's negligence to resolve the duty to defend dispute .................................... 10

          b.     There Is No Parallel Pending State Court Action Because QBE Is Not a Party to the *Clements* Action.......................................... 12

          c.     That QBE Filed Suit in Anticipation of a Lawsuit Does Not Require Dismissal ...................................................................... 14

          d.     QBE Did Not Engage in Forum Shopping Because this Court Will Apply the Same Substantive Law as any State Court........................ 15

          e.     There is no Inequity Related to Precedence in Time or a Change of Forum.......................................................................... 16

          f.     Federal Court is a Convenient Forum for All Parties ................................ 16

          g.     There Is No Relevant State Judicial Decree ............................................. 17

CONCLUSION........................................................................................................ 17

PD.30041819.3

# TABLE OF AUTHORITIES

**Cases**

*ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*,
  699 F.3d 832 (5th Cir. 2012) ............................................................................... 8

*Admiral Ins. Co. v. Zadeck Energy Group*,
  No. 16-912, 2016 U.S. Dist. LEXIS 173989 (W.D. La. Dec. 5, 2016) ..................................... 1

*Agora Syndicate, Inc. v. Robinson Janitorial Specialists, Inc.*,
  149 F.3d 371 (5th Cir. 1998) ........................................................................... 13, 14

*Alert Ctr., Inc. v. Alarm Prot. Servs., Inc.*,
  967 F.2d 161 (5th Cir. 1992) ............................................................................ 8, 11

*Amoco Production Co. v. Texas Gas Transmission Corp.*,
  487 So. 2d 575 (La. App. 4 Cir. 1986) ...................................................................... 13

*Atl. Speciality Ins. Co. v. Phillips 66 Co.*,
  790 F. App'x 598 (5th Cir. 2019) .......................................................................... 11

*AXA Re Property & Cas. Ins. Co. v. Day*,
  162 F. App'x 316 (5th Cir. 2006) ................................................................... 12, 14, 17

*Branton Tools, LLC v. Exco Operating Co.*,
  No. 14-2417, 2015 WL 4662004 (W.D. La. Aug. 5, 2015) ..................................................... 12

*Brooks Well Servicing, Inc. v. Cudd Pressure Control*,
  850 So. 2d 1027 (La. App. 2 Cir. 2003) ..................................................................... 13

*Canal Ins. Co. v. XMEX Transp., LLC*,
  1 F. Supp. 3d 516 (W.D. Tex. 2014) ........................................................................ 17

*Grand Isle Shipyard Inc. v. Seacor Marine, LLC*,
  589 F.3d 778 (5th Cir. 2009) .............................................................................. 11

*Hanover Ins. Co. v. Superior Labor Servs., Inc.*,
  No. 11-2375, 2017 WL 2984867 (E.D. La. July 12, 2017) ..................................................... 13

*Houston Specialty Ins. Co. v. Ascension Insulation & Supply, Inc.*,
  No. 17-1010, 2018 WL 3800052 (W.D. La. July 25, 2018) ................................................. 12, 13

*Howell v. Avante Services., LLC*,
  No. 12-2448, 2013 WL 1681436 (E.D. La. Apr. 17, 2013) ..................................................... 11

*Ironshore Specialty Ins. Co. v. Tractor Supply Co.*,
  624 F. App'x 159 (5th Cir. 2015) .......................................................................... 14

*Lloyds of London v. Transcontinental Gas Pipe Line Corp.*,
  38 F.3d 193 (5th Cir. 1994) ............................................................................... 11, 16

*Martco Ltd. P'ship v. Wellons, Inc.*,
  588 F.3d 864, 872 (5th Cir. 2009) ............................................................................ 8

*Mass. Bay Ins. Co. v. Usie*,
  No. 17-01600, 2018 WL 1834368 (W.D. La. Mar. 26, 2018) ........................... 14, 17

*Meloy v. Conoco, Inc.*,
  504 So. 2d 833 (La. 1987) ........................................................................... passim

*Meloy v. Conoco, Inc.*,
  817 F.2d 275 (5th Cir. 1987) ................................................................................ 2, 11

*Mid-Continent Cas. Co. v. Swift Energy Co.*,
  206 F.3d 487 (5th Cir. 2000) ..................................................................................... 16

*Mission Ins. Co. v. Puritan Fashions Corp.*,
  706 F.2d 599 (5th Cir. 1983) ....................................................................................... 6

*Orix Credit Alliance, Inc. v. Wolfe*,
  212 F.3d 891 (5th Cir. 2000) ....................................................................................... 6

*Sherwin-Williams Co. v. Holmes County*,
  343 F.3d 383 (5th Cir. 2003) ................................................................ 5, 14, 15, 16

*St. Paul Ins. Co. v. Trejo*,
  39 F.3d 585 (5th Cir. 1994) .......................................................................... passim

*Tex. Emp'rs Ins. Ass'n v. Jackson*,
  862 F.2d 491 (5th Cir. 1988) ................................................................... 5, 15, 16

*Trahan v. Morton Salt, Inc.*,
  493 F. App'x 571 (5th Cir. 2012) ............................................................................. 1

*Weeks Marine, Inc. v. Standard Concrete Prod., Inc.*,
  737 F.3d 365 (5th Cir. 2013) ....................................................................................... 8

**Statutes**

28 U.S.C. § 2201 .............................................................................................................. 5

La. R.S. § 9:2780 ................................................................................................. passim

## INTRODUCTION

Plaintiff QBE Syndicate 1036 ("QBE") respectfully submits this Memorandum in Opposition to the Motion to Dismiss Pursuant to the Abstention Doctrine filed by Defendant Compass Minerals Louisiana, Inc. ("Compass").[1]

The motion to dismiss filed by Compass is not well-founded and should be denied.  The motion puts the proverbial cart before the horse by focusing on the *duty to indemnify* (*i.e.*, the ultimate issue of coverage, which must await a determination as to whether Compass was actually negligent in the underlying state-court case) as opposed to the *duty to defend* (which is evaluated pursuant to the eight-corners rule).  To be clear, whether or not QBE owes Compass a defense in the underlying state-court case is a legal issue that is ripe for determination by this Court right now in light of Compass's tenders, and it is the primary reason why QBE filed the instant declaratory judgment action.[2]

Contrary to Compass's argument, the resolution of the duty to defend issue will *not* require this Court to adjudicate Compass's negligence or otherwise interfere with the issues being litigated in state court.  Rather, the duty to defend dispute turns solely on whether the Louisiana Oilfield Anti-Indemnity Act, La. R.S. § 9:2780 ("LOAIA") applies to salt mines (a legal question of first impression that the United States Court of Appeals for the Fifth Circuit has specifically recognized remains open).[3]  If the LOAIA applies to salt mines, then the law is clear that QBE does not owe

---

[1] R. Doc. 16.

[2] The duty to defend issue would remain ripe even if Compass were to withdraw its tenders without prejudice.  *See Admiral Ins. Co. v. Zadeck Energy Group*, No. 16-912, 2016 U.S. Dist. LEXIS 173989, at *5-6 (W.D. La. Dec. 5, 2016) (holding that "by withdrawing the tender without prejudice, Zadeck did not terminate Admiral's duty to defend").

[3] *See Trahan v. Morton Salt, Inc.*, 493 F. App'x 571, 573 n.1 (5th Cir. 2012) (noting, after calling for letter briefs on question of whether LOAIA applies to salt mines, that "[c]ounsel for Scott has expressly

Compass a duty to defend.  Indeed, the Louisiana Supreme Court has concluded that the LOAIA prohibits any provision that requires an "up-front" defense, which is precisely what Compass seeks here.  *See Meloy v. Conoco, Inc.*, 504 So. 2d 833, 839 n.11 (La. 1987) (answering certified questions from U.S. Fifth Circuit); *see also Meloy v. Conoco, Inc.*, 817 F.2d 275, 280 n.11 (5th Cir. 1987) (reproducing Louisiana Supreme Court decision).

Once the Court rules on this threshold legal issue in connection with the duty to defend, all remaining issues in this case (including the duty to indemnify that Compass spends so much time addressing in its motion) will resolve themselves in due course.  If the Court holds that the LOAIA does not apply to salt mines, then this case will be over.  However, if the Court holds that the LOAIA does apply to salt mines, then QBE does not owe Compass a duty to defend, and that ruling will apply with equal force to the question of indemnity if Compass is ultimately found to be negligent in the state-court litigation.  In the unlikely event Compass is ultimately absolved of any fault in the state-court litigation, Compass will be entitled to seek reimbursement of its defense costs from QBE.  *See Meloy*, 504 So. 2d at 839 ("After trial on the merits, if the indemnitee is found free from fault, the [LOAIA] does not prohibit the indemnitee from recovering its cost of defense.").  Under either scenario, this Court is not being asked to interfere with, or duplicate in any way, the underlying state-court litigation and abstention would be improper.

Federal courts routinely adjudicate coverage disputes in declaratory judgment actions, even when those disputes implicate the LOAIA and relate to an underlying action in state court.  Here, Compass's analysis of the *Trejo* abstention factors is skewed by its willful decision to ignore the duty to defend and only discuss the duty to indemnify.  As further explained below, once the issues

---

declined to argue that Morton's claim is barred by the [LOAIA]" and "[w]e therefore express no opinion on the applicability of the LOAIA to this case").

presented in this case are properly characterized and understood, there can be no doubt that the Court should exercise its jurisdiction and deny Compass's invitation to abstain.

## BACKGROUND

This dispute arises out of a fatal accident that occurred at Compass's Cote Blanch salt mine located on Cote Blanch Island in St. Mary Parish, Louisiana, when an electrician employed by MC Electric ("MCE") allegedly contacted an energized electrical circuit while attempting to install a new circuit for the fire suppression system at the salt mine.  As a result of that fatal accident, the decedent's representatives filed a wrongful death and survival lawsuit against Compass and Fire & Safety Specialists, Inc. ("FSS") in the 16th Judicial District Court for the Parish of St. Mary, entitled *Clements, et al. v. Compass Minerals Louisiana, Inc., et al.* (the "*Clements* action").[4]

FSS and MCE performed work for Compass at the salt mine pursuant to Purchase Orders that Compass issued to them.[5]  The Purchase Orders contain identical provisions requiring FSS and MCE to indemnify Compass and name Compass as an additional insured.  Paragraph 6 of the Terms and Conditions of Purchase section of each Purchase Order (the "Indemnification Provision") states:

> 6. INDEMNIFICATION.  TO THE EXTENT PERMITTED BY APPLICABLE LAW, SELLER SHALL INDEMNIFY, HOLD HARMLESS AND DEFEND COMPANY AND ITS AFFILIATES AND THEIR RESPECTIVE EMPLOYEES, OFFICERS, DIRECTORS, SHAREHOLDERS, INSURERS, AGENTS AND REPRESENTATIVES (COLLECTIVELY, THE INDEMNIFIED PARTIES), FROM ALL CLAIMS, LIABILITIES, DAMAGES, SUITS, PROCEEDINGS, COSTS AND EXPENSES (INCLUDING REASONABLE ATTORNEYS FEES) (COLLECTIVELY, THE LOSSES), FOR ANY DAMAGE, INJURY, DEATH, LOSS OR DESTRUCTION OF ANY KIND RELATING TO OR ARISING OUT OF THE PERFORMANCE OR BREACH OF THIS AGREEMENT, INCLUDING WITHOUT LIMITATION, LOSS OR DAMAGE TO ANY PROPERTY OR INJURY TO OR DEATH OF ANY PERSON (INCLUDING,

---

[4] *See* R. Doc. 13-1 (*Clements* petition).

[5] *See* R. Doc. 13-4 (MCE purchase order); R. Doc. 13-5 (FSS purchase order).

> WITHOUT LIMITATION, SELLER, ITS EMPLOYEES, AND ITS AGENTS),
> WHETHER ARISING AS A WORKERS COMPENSATION CLAIM OR
> UNDER THEORIES OF NEGLIGENCE, TORT, STRICT LIABILITY,
> INTENTIONAL MISCONDUCT, OR FAULT OF ANY KIND. THE PARTIES
> AGREE THAT THE FOREGOING INDEMNIFICATION SHALL APPLY TO
> LOSSES INCURRED BY THE PARTIES IN CONNECTION WITH CLAIMS
> BETWEEN THEM.

Paragraph 7 of the Terms and Conditions of Purchase section of each Purchase Order (the

"Additional Insured Provision") states in pertinent part:

> 7.  INSURANCE. . . . In advance of any work in connection with this Agreement
> and on Company's request, Seller shall provide Company with a certificate of
> insurance naming Company as an additional insured on each of the policies
> required by this Agreement (other than Worker's Compensation and Employer's
> Liability). . . .

QBE issued commercial general liability insurance policies to both FSS and MCE that were

in force on the date of the accident.[6]  Compass tendered the *Clements* action to FSS and MCE

seeking defense, indemnity, and additional insured status on the basis of the foregoing

Indemnification and Additional Insured Provisions of its Purchase Orders issued to MCE and

FSS.[7]   QBE denied Compass's tenders and filed this declaratory judgment action seeking a

declaration that the Indemnification and Additional Insured Provisions in the Purchase Orders are

null, void, and unenforceable under the LOAIA, such that QBE does not owe Compass defense or

indemnity with respect to the underlying *Clements* action.

The LOAIA applies to agreements "pertaining to . . . drilling for minerals which occur . . .

in a solid state," La. R.S. § 9:2780(A), and QBE submits that this language covers agreements

related to drilling for salt in a salt mine.  Because the Purchase Orders are "agreements" "pertaining

to . . . drilling for minerals," the Indemnification Provision in the Purchase Orders is null, void,

---

[6] *See* R. Doc. 13-2 (FSS policy); R. Doc. 13-3 (MCE policy).

[7] *See* R. Doc. 16-3 (tender to FSS); R. Doc. 16-5 (tender to MCE).

and unenforceable under Subsection B of the LOAIA insofar as it purports to provide Compass

with indemnity for its negligence.[8]  Additionally, if the Indemnification Provision in the Purchase

Orders is null, void, and unenforceable under Subsection B of the LOAIA, then the Additional

Insured Provision in the Purchase Orders is null and void and of no force and effect under

Subsection G of the LOAIA.[9]

## LAW AND ARGUMENT

### I.     Legal Standard

The Federal Declaratory Judgment Act provides federal district courts with a means to

"declare the rights and other legal relations of any interested party seeking such declaration."  28

U.S.C. § 2201.  The Fifth Circuit has explained that "[o]ne of the main purposes of the Declaratory

Judgment Act . . . was to provide a means to grant litigants judicial relief from legal uncertainty in

situations that had not developed sufficiently to authorize traditional coercive relief."  *Tex. Emp'rs*

*Ins. Ass'n v. Jackson*, 862 F.2d 491, 505 (5th Cir. 1988).  Accordingly, "[a] proper purpose of [the

Declaratory Judgment Act] is to allow potential defendants to resolve a dispute without waiting to

be sued or until the statute of limitations expires."  *Sherwin-Williams Co. v. Holmes County*, 343

F.3d 383, 397 (5th Cir. 2003).

---

[8] Subsection B of the LOAIA provides as follows:  "(B) Any provision contained in, collateral to, or affecting an agreement pertaining to . . . drilling for minerals which occur in a solid . . . state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee."  La. R.S. § 9:2780(B).

[9] Subsection G of the LOAIA provides as follows:  "(G) Any provision in any agreement arising out of the operations, services, or activities listed in Subsection C of this Section of the Louisiana Revised Statutes of 1950 which requires waivers of subrogation, additional named insured endorsements, or any other form of insurance protection which would frustrate or circumvent the provisions of this Section, shall be null and void and of no force and effect."  La. R.S. § 9:2780(G).

PD.30041819.3

Because the Declaratory Judgment Act permits a federal court to declare rights related to an actual controversy within its jurisdiction but does not require it to do so, *see Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 601 (5th Cir. 1983), a district court must engage in a three-step inquiry when determining whether to dismiss or decide a declaratory judgment action.  *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000).   The court must determine whether: (1) the action is justiciable, (2) the court has the authority to grant declaratory relief, and (3) to decide or dismiss the declaratory judgment action.  *Id.*

When confronted with a justiciable declaratory judgment action for which the court has the authority to grant relief (satisfying steps one and two), courts in the Fifth Circuit consider seven-factors to determine whether to decide or dismiss the declaratory judgment action (step three). Those factors include the following:

(1)  whether there is a pending state action in which all of the matters in controversy may be fully litigated;

(2)  whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;

(3)  whether the plaintiff engaged in forum shopping in bringing the suit;

(4)  whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;

(5)  whether the federal court is a convenient forum for the parties and witnesses;

(6)  whether retaining the lawsuit would serve the purposes of judicial economy; and

(7)  whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590 (5th Cir. 1994).

In the discussion that follows below, QBE will begin with the sixth *Trejo* factor regarding judicial economy (because it overwhelmingly favors the exercise of this Court's jurisdiction) and

will then address the remaining *Trejo* factors in turn (all of which either favor the exercise of this Court's jurisdiction or are neutral).

## II.      The Court Should Not Abstain from Adjudicating this Declaratory Judgment Action

The Court should exercise its power to decide this declaratory judgment action because, contrary to Compass's arguments, the *Trejo* factors strongly weigh in favor of deciding this dispute.  Compass does not argue either that the instant declaratory judgment action is not justiciable or that the Court does not have the authority to grant declaratory relief in this case.[10] Instead, Compass maintains that the Court should dismiss the action under the abstention doctrine because the *Trejo* factors weigh in favor of dismissal.  However, Compass's analysis of the *Trejo* factors suffers from a fundamental mischaracterization of the issues presented in this case.

The primary and threshold issues in this case are whether the LOAIA applies to salt mines and whether QBE owes Compass a duty to defend in connection with the *Clements* action, and those issues can be resolved on the pleadings and do *not* require this Court to adjudicate Compass's negligence.  Thus, in point of fact, the *Trejo* factors indicate that this Court should exercise its jurisdiction to decide this declaratory judgment action and provide both QBE and Compass with certainty regarding whether or not QBE owes Compass a defense in connection with the underlying *Clements* action.  If the Court were to abstain, QBE would be faced with the legal uncertainty of whether it owes Compass a defense right now.  Pursuant to the Declaratory Judgment Act and Fifth Circuit jurisprudence, QBE is entitled to resolution of that uncertainty in this action.

---

[10] *See* R. Doc. 16-1 at 8 ("the matter at hand is *likely* justiciable (consideration one), and the court *likely* has the authority to grant declaratory relief (consideration two)").

PD.30041819.3

### a.   Judicial Economy Is Furthered by Deciding this Declaratory Judgment Action

Of all the *Trejo* factors, the sixth is perhaps the strongest in favor of the Court exercising jurisdiction over this matter.  Deciding this declaratory judgment action furthers the interest of judicial economy because:  (1) the controversy can be decided on the pleadings, and (2) the Court need not determine Compass's negligence to resolve the threshold duty to defend issue.

### i.   This controversy can be decided on the pleadings

QBE seeks a declaration that the Indemnification and Additional Insured Provisions in the Purchase Orders are null, void, and unenforceable under the LOAIA, such that QBE does not owe Compass defense or indemnity with respect to the underlying *Clements* action.  In its motion, Compass asks the Court to focus on the duty to indemnify (*i.e.*, the ultimate issue of coverage), but that issue is irrelevant to the abstention inquiry because it will resolve itself once the Court adjudicates the threshold duty to defend issue.

Under Louisiana law, an insurer's duty to defend is determined by analyzing the "eight corners" of the complaint and the underlying insurance policy.  *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 872 (5th Cir. 2009).  To determine whether a defense is owed, the Court must compare the allegations in the underlying complaint with the terms of the policies and the Purchase Orders that purport to extend defense and indemnity to the indemnitee.  *See Alert Ctr., Inc. v. Alarm Prot. Servs., Inc.*, 967 F.2d 161, 163 (5th Cir. 1992); *see also ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 841 (5th Cir. 2012) (applying Texas' eight corners rule and examining purchase agreement to determine whether a party qualified as an "additional insured"); *Weeks Marine, Inc. v. Standard Concrete Prod., Inc.*, 737 F.3d 365, 369 (5th Cir. 2013) (same).

Here, the eight corners of the petition in the *Clements* action, the insurance policies issued by QBE to FSS and MCE, and the Purchase Orders reveal that QBE has no duty to defend Compass

PD.30041819.3

with respect to the *Clements* action.  The *Clements* petition clearly alleges that Compass was negligent and that its negligence contributed to Mr. Clements' injuries and death at the salt mine.[11] For example, the petition alleges that "a Compass Minerals supervisor assigned Anthony Clements . . . the job of running a new dedicated 120 VAC electrical system" and that Clements "was advised that the fire suppression system had been de-energized when he was assigned the task."[12] However, "[c]ontrary to the information that was provided directly to the decedent by the Compass Minerals electrician and the Fire and Safety Specialists technician, the circuit for the fire suppression system was still energized."[13]

Compass is not a named insured on either of the relevant insurance policies issued to FSS and MCE.  Rather, Compass relies on the Indemnification and Additional Insured Provisions of the Purchase Orders to seek defense and indemnity from QBE.  But, as noted above, those provisions are null, void, and unenforceable under the LOAIA to the extent Compass is alleged to be negligent.  Thus, because the *Clements* petition alleges Compass to be negligent, QBE does not owe Compass a duty to defend.  *See Meloy*, 504 So. 2d at 839 n.11 (holding that the LOAIA prohibits any provision that requires an "up-front" defense).  And, in all likelihood, this duty to defend issue is the only issue that this Court is ever going to have to decide, as the following flow chart demonstrates:

---

[11] *See* R. Doc. 13-1 at 2, ¶¶ 8–9.

[12] *See* R. Doc. 13-1 at 2, ¶ 3.

[13] *See* R. Doc. 13-1 at 2, ¶ 4.

PD.30041819.3



Accordingly, exercising jurisdiction over this declaratory judgment action will further judicial economy by providing the most expedient resolution of the duty to defend issue, which in turn will dictate the resolution of all other issues in this case.

### ii. The Court need not adjudicate Compass's negligence to resolve the duty to defend dispute

Compass seeks to scare the Court into abstaining by repeatedly arguing that this Court is being asked to adjudicate Compass's negligence.  That is simply not true.  As noted above, there is no need for the Court to determine whether Compass was actually negligent in causing Mr. Clements' injuries and death in order to adjudicate the duty to defend dispute—the fact that the

*Clements* petition alleges Compass to be negligent is dispositive of that issue.  *See Alert Ctr., Inc.*, 967 F.2d at 163 (no duty to defend when "the allegations in the complaint unambiguously exclude coverage").   Indeed, as noted above, the Louisiana Supreme Court has held that the LOAIA prohibits any provision that requires an "up-front" defense, which is precisely what Compass seeks here.   *See Meloy v. Conoco, Inc.*, 504 So. 2d 833, 839 n.11 (La. 1987) (answering certified questions from Fifth Circuit); *see also Meloy v. Conoco, Inc.*, 817 F.2d 275, 280 n.11 (5th Cir. 1987) (reproducing Louisiana Supreme Court decision).

Not surprisingly, the Fifth Circuit and district courts within this circuit routinely adjudicate declaratory judgment actions seeking declarations regarding the effect of the LOAIA on indemnity provisions in service contracts.  For example, in *Grand Isle Shipyard Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009) (en banc), the Fifth Circuit concluded, in a declaratory judgment action, that the LOAIA applied to invalidate a defense and indemnity provision in a contract for work performed on offshore platforms.  In *Lloyds of London v. Transcontinental Gas Pipe Line Corp.*, 38 F.3d 193 (5th Cir. 1994), the Fifth Circuit adjudicated a declaratory judgment action to determine whether the LOAIA applied to void an indemnity contract between a contractor and the operator of a natural gas pipeline.  Likewise, in *Howell v. Avante Services., LLC*, No. 12-2448, 2013 WL 1681436 (E.D. La. Apr. 17, 2013), the district court adjudicated a declaratory judgment action concerning whether indemnity and additional-insured provisions of a master service contract were voided by the LOAIA.[14]

---

[14] Similarly, the Fifth Circuit adjudicated a declaratory judgment action regarding whether indemnity and insurance provisions in a master services agreement were void and unenforceable under the Louisiana Anti-Indemnity Act, an act that is analogous to the LOAIA that applies to "construction contracts."  *Atl. Specialty Ins. Co. v. Phillips 66 Co.*, 790 F. App'x 598 (5th Cir. 2019).

11

Against this overwhelming weight of authority, Compass relies almost exclusively on the decision in *Branton Tools, LLC v. Exco Operating Co.*, No. 14-2417, 2015 WL 4662004 (W.D. La. Aug. 5, 2015).  Of course, that decision is not binding on this Court, and to the extent it conflicts with the Fifth Circuit authorities discussed above it should not be followed.  Moreover, the court in *Branton Tools* incorrectly concluded that in order to determine whether the LOAIA voided the defense provision at issue there, it would be required to decide whether the purported indemnitee's negligence caused the underlying state-court plaintiff's injuries.  The Louisiana Supreme Court's ruling in *Meloy* confirms that this is incorrect.  As explained at length above, this Court can resolve the duty to defend dispute on the pleadings by simply determining whether the LOAIA applies to salt mines, and that ruling will provide all the guidance the parties need regarding any subsequent question as to indemnity and/or defense costs following resolution of the *Clements* action in state court.

Thus, the interest of judicial economy dictates that the Court should exercise its jurisdiction to decide this declaratory judgment action, and this *Trejo* factor weighs heavily in favor of denying Compass's motion to dismiss.

### b.  There Is No Parallel Pending State Court Action Because QBE Is Not a Party to the *Clements* Action

Turning back to the first *Trejo* factor, there is no parallel pending state court action because QBE is not a party to the *Clements* action.  Rather, the underlying state court action concerns whether Compass, FSS, and MCE are liable for the death of Mr. Clements.  That issue is completely separate from whether QBE has a duty to defend Compass in light of the LOAIA.

The Fifth Circuit has held that, when the liability insurer is not party to the underlying state court action, there is no pending state court action for purposes of the *Trejo* analysis.  *See AXA Re Property & Cas. Ins. Co. v. Day*, 162 F. App'x 316, 320 (5th Cir. 2006); *see also Houston Specialty*

12

*Ins. Co. v. Ascension Insulation & Supply, Inc.*, No. 17-1010, 2018 WL 3800052, at *2 (W.D. La.

July 25, 2018), *report and recommendation adopted*, No. 17-1010, 2018 WL 3795287 (W.D. La.

Aug. 9, 2018) ("To favor abstention, there not only needs to be a related state court proceeding,

but one with the insurer as a party and with the same legal issues presented.").

Compass cannot avoid this result by threatening to sue QBE in state court in response to

this declaratory judgment action.  Indeed, if Compass were to file a third-party demand against

QBE in the *Clements* action,[15] that demand would be subject to dismissal on an exception of lis

pendens or, at a minimum, would be stayed pending resolution of this federal action.  *See, e.g.,*

*Amoco Production Co. v. Texas Gas Transmission Corp.*, 487 So. 2d 575, 576 (La. App. 4 Cir.

1986); *Brooks Well Servicing, Inc. v. Cudd Pressure Control*, 850 So. 2d 1027, 1031 (La. App. 2

Cir. 2003).  Furthermore, a federal district court may maintain jurisdiction over a declaratory

judgment action regarding defense and indemnity *even if* the putative indemnitee (here, Compass)

files a cause of action against the insurer (here, QBE) in a related state court action.  *See Hanover*

*Ins. Co. v. Superior Labor Servs., Inc.*, No. 11-2375, 2017 WL 2984867, at *6 (E.D. La. July 12,

2017).  Along these lines, in reversing the dismissal of an insurer's declaratory judgment action,

the Fifth Circuit held that the district court should have exercised jurisdiction, notwithstanding that

(1) the insurer could have intervened in the state court action and received the same declaratory

judgment; (2) the insurer could have filed a separate declaratory judgment action in state court,

and (3) the case involved novel and complex questions of state law.  *Agora Syndicate, Inc. v.*

---

15 *See* R. Doc. 16-1 at 10 (indicating that Compass "will be filing Third Party Demands [in the underlying state court action] asserting its claims for defense and indemnity against FSS, MCE and QBE once [an exception regarding the plaintiffs' capacity to bring the underlying action] has been resolved and it answers the petition").

13

*Robinson Janitorial Specialists, Inc.*, 149 F.3d 371, 372-73 (5th Cir. 1998) ("We hold that the district court abused its discretion in declining jurisdiction.").

In this case, QBE should not be forced to intervene in the underlying *Clements* action or wait to be sued in that action in order to receive clarification regarding whether it owes Compass a duty to defend in the *Clements* action.  QBE properly initiated this declaratory judgment action and the Court should exercise its jurisdiction and provide the parties with certainty regarding their respective rights and duties. *See AXA Re Property & Cas. Ins. Co. v. Day*, 162 F. App'x 316,  321 (5th Cir. 2006) (holding that "judicial economy is not contravened by retaining the [declaratory judgment] action because no other proceeding is able to consider the coverage dispute; again, [the insurer] is not a party to the Louisiana litigation").

Although the lack of a pending parallel state court proceeding does not *automatically* require a district court to decide a declaratory judgment action, "it is a factor that weighs strongly against dismissal."  *Sherwin-Williams*, 343 F.3d at 394; *see also Mass. Bay Ins. Co. v. Usie*, No. 17-01600, 2018 WL 1834368, at *4 (W.D. La. Mar. 26, 2018), *report and recommendation adopted*, 2018 WL 1833312 (W.D. La. Apr. 17, 2018).  Because there is no pending parallel state court proceeding, this factor weighs strongly in favor deciding the instant declaratory judgment action and denying Compass's motion to dismiss.

### c.  That QBE Filed Suit in Anticipation of a Lawsuit Does Not Require Dismissal

Regarding the second *Trejo* factor, it is permissible for an insurer to file a declaratory judgment action in anticipation of a separate state-court determination of the scope of insurance provisions.  *See Ironshore Specialty Ins. Co. v. Tractor Supply Co.*, 624 F. App'x 159, 167 (5th Cir. 2015) ("[T]o the extent the federal suit was filed in anticipation of a separate state determination of the scope of the insurance provisions, this is a permissible purpose under the

14

[Declaratory Judgment Act].").  Indeed, the Fifth Circuit has concluded that "[m]erely filing a declaratory judgment action in a federal court with jurisdiction to hear it, in anticipation of state court litigation, is not in itself improper anticipatory litigation or otherwise abusive 'forum shopping.'" *Sherwin-Williams*, 343 F.3d at 391.  QBE is simply utilizing the declaratory judgment action as it was intended, to obtain "judicial relief from uncertainty," *Jackson*, 862 F.2d at 505, and to "allow potential defendants to resolve a dispute without waiting to be sued or until the statute of limitations expires," *Sherwin-Williams*, 343 F.3d at 397.  Even Compass agrees this factor is neutral.[16]

### d. QBE Did Not Engage in Forum Shopping Because this Court Will Apply the Same Substantive Law as any State Court

The Fifth Circuit has concluded that there is no impermissible forum shopping when a declaratory judgment action is brought in a federal court that will apply the same law had the action been brought in state court. *Sherwin-Williams*, 343 F.3d at 399.  Instead, improper forum shopping occurs when a declaratory judgment plaintiff files suit in a federal court that will apply different choice-of-law rules, and thus, different substantive law than the state court.  Here, this Court will apply Louisiana law in this matter, which is the same law that would be applied if the parties' disputes were litigated in state court.  Accordingly, there has been no impermissible forum shopping.

Similarly, the fact that MCE and FSS are not joined as parties to this federal litigation does not evince improper forum shopping because, had they been included, diversity jurisdiction would still exist.  MCE and FSS, both Louisiana corporations with their principal places of business in

---

[16] *See* R. Doc. 16-1 at 8.

Louisiana,[17] are diverse from Compass, a Delaware corporation with its principal place of business in Kansas.[18]  Further, the Fifth Circuit has adjudicated declaratory judgment actions brought solely by the insurer against a purported indemnitee without including the insured contractor.  *See Lloyds of London v. Transcontinental Gas Pipe Line Corp.*, 38 F.3d 193 (5th Cir. 1994) (including only the insurer and purported indemnitee); *see also Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487 (5th Cir. 2000) (including only the insurer and purported indemnitees).

Because there is no evidence of impermissible forum shopping, this *Trejo* factor weighs in favor of deciding the declaratory judgment action and denying Compass's motion to dismiss.

### e.   There Is No Inequity Related to Precedence in Time or a Change of Forum

Two of the main purposes of the Declaratory Judgment Act are to provide "judicial relief from uncertainty," *Jackson*, 862 F.2d at 505, and to "allow potential defendants to resolve a dispute without waiting to be sued or until the statute of limitations expires," *Sherwin-Williams*, 343 F.3d at 397.  QBE utilized the Declaratory Judgment Act as it was intended—to determine whether QBE owes Compass any duties under the applicable insurance policies in light of the Indemnification and Additional Insured Provisions of the Purchase Orders.  Accordingly, this factor weighs in favor of deciding the declaratory judgment action.

### f.   Federal Court Is a Convenient Forum for All Parties

Compass concedes that the United States District Court for the Western District of Louisiana is a convenient forum for the parties.[19]  Another court in the Western District of Louisiana has likewise analyzed the proximity of the 16th Judicial District Court, where the

---

[17] *See* R. Doc. 13-1 at 1.

[18] *See* R. Doc. 13 at 2.

[19] *See* R. Doc. 16-1 at 9.

*Clements* action is pending, to the United States District Court for the Western District of Louisiana, which is twenty miles away, and concluded that they are equally convenient forums. *Usie*, 2018 WL 1834368, at *6.  This factor weighs in favor of deciding the declaratory judgment action and denying Compass's motion to dismiss.

### g.  There Is No Relevant State Judicial Decree

Courts in the Fifth Circuit have determined that, when the insurer is not a party to the underlying state court action, the disposition of a declaratory judgment action regarding coverage will not require the court to construe a state judicial decree related to a parallel state suit because there *is no* parallel suit.  *See Day*, 162 F. App'x at 321; *Usie*, 2018 WL 1834368, at *7; *Canal Ins. Co. v. XMEX Transp., LLC*, 1 F. Supp. 3d 516, 527 (W.D. Tex. 2014).  Compass concedes that this factor is not relevant to the instant case.[20]

## CONCLUSION

For all of the foregoing reasons, the Court should deny Compass's motion to dismiss.  The *Trejo* factors, and Fifth Circuit precedent, weigh heavily in favor of this Court exercising its jurisdiction to decide the instant declaratory judgment action.  Furthermore, the Louisiana Supreme Court's decision in *Meloy* makes clear that the LOAIA prohibits the "up-front" defense that Compass seeks from QBE, and once the Court addresses that threshold legal issue by determining whether the LOAIA applies to salt mines, all other disputes between QBE and Compass are likely to resolve themselves in due course.

---

[20] *See* Rec. Doc. 16-1 at 10.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:   */s/ Jeremy T. Grabill*
       Jeremy T. Grabill (Bar #34924)
       Lindsay J. Calhoun (Bar #35070)
       Ashley W. Hinton (Bar #35171)
       Canal Place | 365 Canal Street, Suite 2000
       New Orleans, Louisiana 70130-6534
       Telephone: 504-566-1311
       Telecopier: 504-568-9130
       Email: jeremy.grabill@phelps.com
            lindsay.calhoun@phelps.com
            ashley.hinton@phelps.com

**ATTORNEYS FOR QBE SYNDICATE 1036**

18