# Compass Minerals

## PURCHASE ORDER

| Branch/Plant | 20245 | PO no. | 19653362 |
|---|---|---|---|
| Page 1 of 5 | | Blanket no. | OP |

| VENDOR: | FIRE & SAFETY SPECIALISTS INC.<br>P O BOX 60639<br>LAFAYETTE LA 70596<br>PHONE: 337-993-9377   FAX: 337-216-9792   EMAIL: | SHIP TO: | COMPASS MINERALS LOUISIANA<br>HWY 83 SOUTH<br>1382 COTE BLANCHE ISLAND<br>FRANKLIN LA 70538 | BILL TO: | COMPASS MINERALS LOUISIANA<br>P O BOX 10<br>LYDIA, LA<br>70569-0010 |

THIS ORDER IS SUBJECT TO TERMS AND CONDITIONS OF PURCHASE AS INCLUDED IN THIS ORDER

| Order Date | Buyer Name | Buyer Telephone | Buyer Fax | Buyer Email | Delivery Instructions |
|---|---|---|---|---|---|
| 8/8/2019 | ▓ | ▓ | ▓ | ▓ | |

| Payment Terms | GST Registration No. | PST Exemption No. | Currency Code | Freight Terms |
|---|---|---|---|---|
| | | | USD | . |

| Line # | Chg Ord | Item # | Description | Quantity | UOM | Unit Price | Extended Price | Request Date | TAX |
|---|---|---|---|---|---|---|---|---|---|
| 1.000 | 2 | | TECH INSPECT FIRE SUP UG<br>C3,C18,MCC ROOM | ▓ | EA | ▓ | ▓ | 9/15/19 | |
| | | | SPOKE WITH ▓ AND ▓ AT FSS TO HAVE A TECH COME OUT NEXT WEEK TO INSPECT FIRE SUPRESSION SYSTEM IN THE MILL UNDERGROUND. C-3,C-18, AND MCC ROOM. WE WILL HAVE A TECH SHADOW HIM UNDERGROUND. ▓ WILL CALL BACK WITH SCHEDULING DATE. | | | | | | |
| | | | Sales Tax | | | | ▓ | | |

| AUTHORIZED SIGNATURE_____ | TAX AMOUNT | ▓ |
|---|---|---|
| | TOTAL AMOUNT THIS ORDER | ▓ |



TERMS AND CONDITIONS OF PURCHASE

A. UNIVERSAL TERMS APPLICABLE TO ALL PURCHASES

1. PURCHASE AND SALE; NO JOINT LIABILITY. Subject to the terms and provisions of this Agreement, Seller agrees to sell the Products and perform the Services described in the attached Purchase Order. Seller shall be deemed to have accepted the Purchase Order upon its execution of an acknowledgment of the Purchase Order, its shipment of Products described in the Purchase Order or its commencement of performance of the Services described in the Purchase Order. Company objects to variations in and additions to any of the terms and conditions of this Agreement, irrespective of the wording of Seller's acceptance, proposal, invoice, shipping receipt or other written materials (Seller's Forms). Any terms in Seller's Forms that add to, vary from, or conflict with this Agreement shall be void. Company may terminate this Agreement or suspend work, in whole or in part, at any time, for any reason, upon written notice to Seller. The obligations of each Company are separate and distinct from one another and are not joint, with each Company's obligations extending only to Purchase Orders issued by such Company.

2. DEFINITIONS. (a) Agreement means these Terms and Conditions of Purchase and the Purchase Order that accompanies them or to which they are attached; (b) Company means (i) Compass Minerals America Inc., a Delaware corporation, (ii) Compass Minerals Ogden Inc., a Delaware corporation, (iii) Compass Minerals Louisiana Inc., a Delaware corporation, (iv) Compass Minerals Canada Corp., a Nova Scotia unlimited company, or (v) Compass Minerals Wynyard Inc., a Saskatchewan unlimited company, whichever entity issues the Purchase Order; (c) Products means all goods, materials, chattels, equipment, supplies and machinery to be provided pursuant to this Agreement, including those provided in connection with or incidental to the performance of Services; (d) Purchase Order means the purchase order issued by Company to Seller, as such Purchase Order may be modified pursuant to this Agreement; (e) Seller means the person, partnership, company or corporation providing the Products or Services to Company; and (f) Services means all labor and work to be provided pursuant to this Agreement.

3. PAYMENT; TAXES. Unless otherwise provided on the face of the Purchase Order and subject to any conditions to or withholdings of payment set forth in this Agreement or provided by applicable law, payment shall be made within 47 days of the date of Seller's invoice. Seller's invoice shall not be issued earlier than the date of Seller's performance of the Services or shipment of the Products. Any taxes not disclosed on the Purchase Order shall be the responsibility of Seller. Pursuant to paragraph 153(1)(g) of the Canadian Income Tax Act and Regulation 105 (as amended from time to time), a withholding of 15% is required from the payment of fees, commissions and other amounts paid or allocated to a non resident person in respect of services provided in Canada. Seller shall clearly state on its invoice what portion of services was performed inside Canada and what portion of services was performed outside of Canada. If Seller has received a waiver of or reduction in such withholding from all applicable taxing authorities, Seller must provide such waiver or reduction to Company in order for its payments not to be subject to this withholding.

4. ELECTRONIC COMMERCE. Company and Seller may transact electronic exchanges of Purchase Orders and modifications of or cancellations of Purchase Orders. Electronic transmission of a Purchase Order by Company to Seller shall be effective as an offer when it is received on Seller's terminal. The terms of an electronically transmitted Purchase Order shall be those terms and conditions contained in this Agreement regardless of any other terms and conditions.

5. ORDER MODIFICATIONS. Upon notice to Seller, Company may make changes in the specifications of the Products ordered before they are manufactured or in the timing, method or place of delivery before they are shipped. If Seller determines that any change made by Company requires an adjustment in the price or compensation to be paid or in the delivery or performance schedule previously agreed to, Seller must notify Company of the adjustment as soon as possible, but in any event within thirty (30) days, after the date on which Company notifies Seller of the change. If Seller does not provide its notice of adjustment in a timely manner, then Seller's claim for adjustment shall be waived. All adjustments agreed to by Company and Seller shall be documented with a revised Purchase Order or other written agreement between the parties.

6. INDEMNIFICATION. TO THE EXTENT PERMITTED BY APPLICABLE LAW, SELLER SHALL INDEMNIFY, HOLD HARMLESS AND DEFEND COMPANY AND ITS AFFILIATES AND THEIR RESPECTIVE EMPLOYEES, OFFICERS, DIRECTORS, SHAREHOLDERS, INSURERS, AGENTS AND REPRESENTATIVES (COLLECTIVELY, THE INDEMNIFIED PARTIES), FROM ALL CLAIMS, LIABILITIES, DAMAGES, SUITS, PROCEEDINGS, COSTS AND EXPENSES (INCLUDING REASONABLE ATTORNEYS FEES) (COLLECTIVELY, THE LOSSES), FOR ANY DAMAGE, INJURY, DEATH, LOSS OR DESTRUCTION OF ANY KIND RELATING TO OR ARISING OUT OF THE PERFORMANCE OR BREACH OF THIS AGREEMENT, INCLUDING WITHOUT LIMITATION, LOSS OR DAMAGE TO ANY PROPERTY OR INJURY TO OR DEATH OF ANY PERSON (INCLUDING, WITHOUT LIMITATION, SELLER, ITS EMPLOYEES AND ITS AGENTS), WHETHER ARISING AS A WORKERS COMPENSATION CLAIM OR UNDER THEORIES OF NEGLIGENCE, TORT, STRICT LIABILITY, INTENTIONAL MISCONDUCT, OR FAULT OF ANY KIND. THE PARTIES AGREE THAT THE FOREGOING INDEMNIFICATION SHALL APPLY TO LOSSES INCURRED BY THE PARTIES IN CONNECTION WITH CLAIMS BETWEEN THEM.

7. INSURANCE. The indemnification provisions of this Agreement are in addition to, and not in substitution for or a limitation of, these insurance provisions. Unless otherwise agreed in writing by Company, Seller shall comply with the following insurance provisions. Seller shall obtain and maintain, and upon Company's request ensure that its subcontractors maintain, the following insurance coverages with insurers licensed to do business in all jurisdictions in which Seller does business and having an S&P rating of A or above and/or a Best's rating of A10 or above: (a) Worker's Compensation as required under any worker's compensation or similar law in the jurisdiction in which the work under the Purchase Order is performed; (b) Employer's Liability with a limit of at least $1,000,000 on a per accident basis; (c) Commercial General Liability, including coverage for Contractual Liability, Products/Completed Operations Liability, Contractor's Protective Liability (if using subcontractors) and Environmental/Pollution Liability, for bodily injury, personal injury and property damage liability, with Products/Completed Operations Liability to extend for two (2) years following performance of the work under the Purchase Order, each with a limit of at least $1,000,000 on a combined single limit, per occurrence basis; (d) Automobile Liability covering the ownership, maintenance and use of any owned, non owned and hired automobiles, covering bodily injury and property damage liability, with a limit of at least $1,000,000 on a combined single limit, per accident basis; and (e) Excess Liability, including Employer's Liability, General Liability (including all coverages required under subsection (c) above) and Auto Liability, with a limit of at least $2,000,000 per occurrence on an occurrence form. Seller's self insured retention and/or deductible for each of the foregoing policies shall not exceed $50,000. In advance of any work in connection with this Agreement and on Company's request, Seller shall provide Company with a certificate of insurance naming Company as an additional insured on each of the policies required by this Agreement (other than Worker's Compensation and Employer's Liability). The failure of Company to object to Seller's failure to furnish a certificate or Company's failure to object to any defect in such certificate, shall not be a waiver of Seller's insurance obligations. Seller hereby: (i) represents and warrants that all insurance described above shall be primary and noncontributory and any other valid and collectible insurance available to Company shall be excess; (ii) waives any rights of recovery or subrogation against Company; (iii) represents and warrants that all retentions and deductibles shall be at the sole expense and for the account of Seller; and (iv) represents and warrants that no amendments or endorsements to the insurance described above need be issued in order for the representations and waivers contained in items (i) through (iii) of this subsection to be effective against Seller and its insurers.

8. INDEPENDENT CONTRACTOR. Seller and its contractors, employees, representatives and agents are independent contractors as to Company for all purposes related to and at all times during the term of this Agreement. Seller has responsibility for, and control over, the means and details of performing any services in connection with the production and transport of Products and/or provision of Services. Seller shall control and supervise all performance by such persons. Company shall incur no liability or obligation to employees, agents, representatives, contractors or other parties utilized by Seller, and Seller shall require all such persons to comply with the terms of this Agreement. Company shall not be liable for any act or omission of Seller or any of its employees, representatives, contractors or agents.

9. ASSIGNABILITY. Seller may not assign or delegate this Agreement in whole or in part either voluntarily or by operation of law without the express written consent of Company. If Seller assigns this Agreement without Company's consent, Company may at its sole option treat the assignment as null and void.

10. GOVERNING LAW; CHOICE OF LANGUAGE. This Agreement shall be construed in accordance with the laws of Delaware if the Company is an entity incorporated or organized in the United States, or construed in accordance with the laws of the Province of Ontario if the Company is an entity incorporated or organized in Canada. The United Nations Convention on the International Sale of Goods shall not apply to the transactions under this Agreement. The parties have expressly required that this Agreement and all documents and notices relating hereto be drafted in English. Les parties aux présentes ont expressément exigé que la présente convention et tous les documents et avis qui y sont afférents soient rédigés en anglais.

11. ENTIRE AGREEMENT; SEVERABILITY; SECTION HEADINGS. This Agreement constitutes the entire agreement of the parties and supersedes all previous written or oral understandings and agreements between the parties regarding the subject matter hereof. If any provision of this Agreement (or any portion of any provision) is held to be unenforceable by a court of competent jurisdiction, such provision shall be enforced to the extent permitted by law and the remainder of this Agreement will remain in effect, to be construed in such a manner as to give effect to the intent of the parties to the greatest extent possible. The captions or section headings of this Agreement are for convenience of reference only and shall not be used to interpret the terms of this Agreement or construed as an expression of the intent of the parties.

12. NOTICES. All notices required or permitted under this Agreement shall be in writing and shall be deemed effective upon personal delivery, upon delivery by overnight or express mail, or by facsimile (with transmission acknowledgment) to the parties at the vendor or Company's ship to address or facsimile number set forth on the Purchase Order, as applicable, or to such other address or facsimile number as either party shall give the other notice of in writing.

13. SURVIVAL; REMEDIES. Sections 6 (Indemnification), 12 (Notices), 16 (Inspection of Products), 17 (Product Warranty), 22 (Ownership of Work Product), 24 (Seller Representations), 25 (Licenses; Warranties), 28 (Inspection of Services), and 29 (Remedies), in addition to this Section and any other provisions that by their content are intended to survive, shall survive the delivery of Products and the performance of Services under the Purchase Order and the termination or expiration of this Agreement. The remedies provided for in this Agreement are in addition to all other remedies available to Company at law or in equity.

B.     ADDITIONAL TERMS APPLICABLE TO ORDERS OF PRODUCTS

14. PURCHASE PRICE. The purchase price for the Products shall be as set forth on the Purchase Order.

15. SHIPPING; DELIVERY. Seller shall deliver the Products DDP (Incoterms 2010) to Company's ship to address identified on the Purchase Order, unless otherwise specified in the Purchase Order. Company may require that Products not delivered within the time specified be shipped by the most expeditious and rapid means of transportation with additional cost of said shipment to Seller's account. Title to the Products shall transfer to Company upon their delivery to Company or Company's payment of the purchase price, whichever is earlier.

16. INSPECTION OF PRODUCTS. All Products shall be subject to inspection and test by Company. Company shall have the right to reject Products that in Company's opinion are not fit for the purposes intended by Company, contain defective material, do not meet the Product specifications, or are not in conformity with the Purchase Order. Rejected Products shall be removed by Seller promptly after notification of rejection, at the expense of Seller (including transportation), for credit on the purchase price or correction of defects, at Company's option. Failure on the part of Company to inspect any Products does not relieve Seller from liability if Company determines at a later date that the Products do not meet the requirements.

17. PRODUCT WARRANTY. Seller warrants that (a) it is the owner of good and clear title to the Products, (b) the Products shall be new and merchantable and conform to the specifications set forth on the Purchase Order and any statements made on the containers, labels, product data sheets, manuals, advertisements, brochures and other marketing materials for such Products, (c) the Products shall not contain any contaminants from any source, whether resulting from manufacture, transportation or storage of Products, prior to delivery to Company, and (d) the Products shall be free from defects in material and workmanship for a period of one year following delivery to Company or for such longer period as may be set forth in any manufacturer's or Seller's published warranty. If Seller knows of or has reason to know the particular purposes for which Company intends to use the Products, Seller warrants that such goods shall be fit for such particular purposes. All such warranties shall survive inspection, test, acceptance and use and shall run to Company, its successors, assigns, buyers and users. Seller hereby assigns to Company all manufacturer's warranties covering the Products.

C.     ADDITIONAL TERMS APPLICABLE TO ORDERS OF SERVICES

18. PERFORMANCE STANDARDS. Performance by Seller shall be done in an ethical, professional and workmanlike manner and shall comply with all applicable laws, rules, regulations, licensing requirements, permits, certificates, or other legal requirements. Seller shall have complete control of the Services and shall direct and supervise the Services using its highest and best management practice, skill and attention.

19. COMPENSATION. Compensation for the Services shall be at the rates or the prices and in accordance with the schedule set forth in the Purchase Order. Company shall not be required to reimburse Seller for any expenses Seller pays or incurs unless otherwise set forth in the Purchase Order, and any expenses incurred by Seller in connection with this Agreement that are not expressly agreed in writing by the parties to be reimbursable under the Purchase Order shall be Seller's responsibility as overhead. The compensation shall not be subject to escalation for any reason. Any amount on the Purchase Order that is estimated shall constitute a not to exceed amount for purposes of Seller's compensation.

20. PAYMENT SCHEDULE. Payment of compensation to Seller shall be due only after: (a) performance of the Services (or portion thereof if progress payments are to be made) within the time period specified in the Purchase Order; (b) if applicable, receipt of an itemized invoice from Seller, including time records and receipts for materials, supplies and expenses to be reimbursed; and (c) inspection by and full satisfaction of the Company as to the completeness and quality of the Services being billed. Seller shall pay all third parties retained by Seller for their labor, materials, equipment and supplies in connection with this Agreement. Company may withhold payment to Seller to the extent Seller has not provided Company with reasonable evidence that Seller has made such payments. Prior to being entitled to payment, upon Company's request, Seller shall provide Company with lien waivers and releases acceptable to Company from Seller and all third parties providing labor, materials, equipment or supplies in connection with this Agreement. Company and/or its authorized representatives shall have the right to review and examine the books, records and assets of Seller that relate to the performance of this Agreement, costs or pricing data, or to other aspects of this Agreement at Seller's premises during normal business hours. Seller shall preserve all books and records relating to this Agreement for a period of three (3) years from the date of final payment by Company.

21. EQUIPMENT, TOOLS, MATERIALS AND SUPPLIES. Seller shall provide at its expense all equipment, tools, materials, software and supplies necessary for performance of the Services. At Seller's sole risk, Seller may store such equipment, tools, materials, software and supplies on Company's premises during the term of this Agreement, but no software shall be installed on Company's computer systems. Promptly upon termination of this Agreement or earlier request by Company, Seller shall remove all such items from Company's premises. If some or all of such items belong to Company, Seller agrees to return such items to a place designated by Company. To the extent that temporary facilities need to be erected, Seller shall have the sole responsibility for the design, erection, operation, maintenance and removal of such temporary facilities and shall be responsible, at its cost, for engaging a professional engineer to aid in such construction if necessary.

22. OWNERSHIP OF WORK PRODUCT. All Work Product (defined below) shall be considered work(s) made by Seller for hire for Company and shall belong exclusively to Company. If by operation of law any of the Work Product, including all related intellectual property rights, is not owned in its entirety by Company automatically upon creation thereof, then Seller assigns to Company the ownership of such Work Product, including all related intellectual property rights. Work Product shall mean all information, processes, methodologies, technology, know how, software, modifications and enhancements developed or created by Seller in connection with the Services, including the copyright rights in the source code, object code and the audiovisual aspects of the same and any copies thereof and any and all instrument manuals required for the operation thereof. All information, processes, plans, designs, drawings, methodologies, technology, know how, software, modifications and enhancements provided by Seller in connection with the Services will be deemed Work Product unless a signed writing attached to this Agreement identifies the information, processes, plans, designs, drawings, methodologies, technology, know how, software, modifications or enhancements owned by Seller (Seller's Rights) that will be used in connection with the Services, in which case Seller's Rights will not be included in the Work Product. Seller grants Company an irrevocable, perpetual, fully paid and royalty free right and license to use Seller's Rights in connection with the Work Product (including any improvements to the Work Product created by any person) and to transfer the same in the event of a license, sale or disposition of the Work Product. All software owned or licensed by Seller (e.g., CAD programs) that is used to perform the Services shall constitute Seller's Rights.

23. SUBCONTRACTORS; OTHER COMPANY CONTRACTORS. Seller may only engage subcontractors to perform the Services if Company approves such subcontractors and their scope of work in writing in Company's sole discretion. Company may enter into agreements with other contractors in connection with the project for which the Services are being performed and Company and Seller shall work together to coordinate the work of such other contractors.

24. SELLER REPRESENTATIONS. Seller represents that (a) the Services will not violate or infringe upon the rights of any third party, (b) performance of the Services will not violate any agreements or restrictions to which Seller is a party or is bound, (c) Seller will only disclose information to Company that Seller has the right and authority to disclose, (d) its performance of the Services will not violate any applicable laws, (e) the Work Product will not violate or infringe upon the copyrights or other intellectual property rights of any third party, and (f) neither Seller nor any of its employees, representatives, agents or subcontractors has offered or given anything of value to Company's employees, agents or representatives with a view toward securing this Agreement or favorable treatment with respect thereto.

25. LICENSES; WARRANTIES. Seller shall ensure that Seller and all employees, representatives, agents and subcontractors who perform Services are licensed in accordance with all applicable laws. Seller shall obtain and keep current at its expense all permits, certificates and licenses necessary for performance of the Services. Seller warrants to Company that (a) the Services shall conform to the requirements contained in the Purchase Order, (b) the Services will be free from defects in material and workmanship for a period of one year following acceptance by Company or for such longer period as may be set forth in the Purchase Order and (c) all Work Product shall be accurate and complete in all material respects.

26. STATUTORY EMPLOYEE. Notwithstanding anything else to the contrary, for purposes of workers compensation coverage it is expressly agreed that the Services are essential to the trade, business or occupation of Company and that, in the event the workers compensation insurance coverage provided by Seller or any subcontractor of Seller does not cover all injuries to or the death of any of Seller's employees or subcontractors or any of their respective employees or contractors, then all such persons are and shall be deemed statutory employees of Company while performing the Services, so that Company is a principal and statutory employer under applicable workers compensation law.

27. SAFETY AND SECURITY. Seller agrees that, and Seller shall advise its employees, representatives, agents and subcontractors that, it is the policy of Company that: (a) the use, possession and/or distribution of illegal or unauthorized drugs, drug related paraphernalia or weapons on Company's premises is prohibited and the use or possession of alcoholic beverages is also prohibited; and (b) entry onto or presence on Company's premises by any persons, including Seller and its employees, agents and subcontractors, and any of subcontractor's employees, agents and contractors, constitutes their acceptance to allow Company to conduct searches, whether announced or unannounced, on Company's premises, of the person and his or her personal effects for such prohibited items. Seller and its employees, agents, and subcontractors shall comply with all policies, rules and regulations of Company and with all postings and notices located on Company's premises, whether or not relating to security matters, to the extent they are conspicuous or Seller is made aware of their existence. Seller acknowledges that it has been retained in part due to its knowledge of all applicable safety and health laws applicable to its performance of this Agreement.

28. INSPECTION OF SERVICES. Company and its representatives shall have access to the Services for inspection at any time. Such inspections shall not constitute acceptance of the Services or relieve Seller of its obligations under this Agreement. If special tests or approvals are required by governmental or regulatory authorities, Seller shall arrange for such inspections, provide Company with reasonable prior notice thereof and furnish Company copies of all certificates and inspection reports. Company may require that Seller remove any rejected work within a reasonable time fixed by written notice from Company, or deduct from the compensation due Seller the difference in value between the Services as performed and that called for by this Agreement, the amount of such deduction to be determined by Company in its sole discretion. If the rejected work is removed or replaced, any other work damaged by such removal or replacement shall be made whole promptly at Seller's expense.

29. REMEDIES. If Company terminates a Purchase Order in whole or in part due to Seller's failure to perform its obligations under this Agreement, Company may procure, upon such terms and in such manner as it determines, services similar or identical to those so terminated, and Seller shall be liable to Company for any reasonable excess costs for such similar or identical services. If this Agreement is terminated for any reason, Seller shall transfer title and deliver immediately to Company any partially completed work including, without limitation, reports and working papers that Seller has produced or acquired or caused to be produced or acquired for the performance of such terminated work.

30. COMPANY DRAWINGS AND PLANS. Drawings, models and plans necessary for the Services may be provided by either party, as agreed upon. Such drawings, models and plans will become part of the project only upon written approval of Seller and Company. All records, reports, data, plans, drawings, models and other information furnished by Company are and shall remain the property of Company and are not to be used on other jobs. Such documents are not to be copied or revised without written consent from Company.

31. CUTTING, EXCAVATION AND REMEDIAL WORK. Seller shall do all remedial work necessary to make several parts of the Products and Services come together properly. Seller agrees to coordinate the schedule for the Services so that required remedial work is timed properly. Whenever welding, cutting or other hot work equipment is used, whether for remedial work or otherwise, Seller will notify Company and obtain Company's approval and any permits required prior to performing such work.

32. CONSTRUCTION SECURITY. Seller shall protect Company's property from damage as the result of Seller's performance under this Agreement. The duty to protect includes but is not limited to: (a) confining equipment and operations to the work site (unless otherwise agreed by Company); and (b) prohibiting unauthorized persons to the work site or surrounding Company property. To the extent that temporary facilities need to be erected, Seller shall have the sole responsibility for the design, erection, operation, maintenance and removal of such temporary facilities and shall be responsible for engaging a professional engineer to aid in such construction if necessary.

33. CONSTRUCTION SAFETY. Seller will not use any product or material in connection with performing the Services that fails to comply with any applicable rules, regulations or standards of any governmental agency or that could present a risk to the public health or safety or to the environment. Seller acknowledges that is has been retained by Company in part due to Seller's knowledge of all safety and health laws, rules and regulations applicable to the performance of the Services, including without limitation, (in the United States) the Occupational Safety and Health Act and the Mining Safety and Health Act, and (in Canada) the Workplace Hazardous Materials Information System, and the Occupational Health and Safety Act and Regulations for Mines and Mining Plants. Seller will: (a) submit to the Company a project safety analysis and job procedures for the Services, all of which will be provided to and discussed with workers and a record kept of such instructions; (b) provide Company with all Material Safety Data Sheets for all chemicals, solvents and other hazardous materials and obtain Company's written approval for all such materials before bringing them onto Company property; (c) unless otherwise stated in this Agreement, provide for all workers at the work site: safety hats, side shield eye protection, mata tarsal guard safety footwear, reflective work wear, personal lock with unique key, D ring safety belt, and gloves all approved by Company; (d) provide all other personal protective equipment required by Company; (e) provide a report of all accidents of Seller's employees, subcontractors and agents while on Company property immediately with a detailed written report provided to Company within 12 hours of the incident; (f) promptly notify Company of all citations or warnings received for the violation of safety rules from any governmental or regulatory agency during the term of this Agreement, with a copy of any citation or order provided to Company within 12 hours of receipt; (g) maintain membership in good standing with a recognized safety association; and (h) provide Company with a copy of its health and safety policy and a copy of its most recent safety statistics.

34. SUBSURFACE CONDITIONS. Seller shall promptly notify Company in writing if in its opinion the subsurface conditions at the work site differ substantially from those indicated in the other project documents, including the drawings, models, plans and specifications. If Company determines that the conditions do differ, the parties shall agree upon any changes in the Services.

35. ACCESS TO SERVICES. Company may conduct periodic inspections of the Services. Inspections may determine the extent of compensation to Seller for Services performed. Company and its representatives shall have access to the Services for inspection at any time and Seller will provide proper facilities for such access. Inspections shall not constitute acceptance of the Services or relieve Seller of its obligations under this Agreement. If special tests or approvals are required by governmental or regulatory authorities, Seller shall arrange for such inspections, provide Company with reasonable prior notice and furnish Company with copies of all certificates and inspection reports.

36. CLEANUP AFTER SERVICES. Seller shall maintain the work site on a daily basis in a tidy condition free from accumulation of waste and debris. Upon completion of the Services and at such other times as reasonably required by Company, Seller shall remove all surplus products, tools, construction machinery and equipment in addition to any waste or debris and Company's property shall be left broom clean or its equivalent unless otherwise agreed by the parties.

37. EQUAL OPPORTUNITY. For Sellers supplying Products to a Company which carries on business in the United States, Seller hereby agrees to comply with the provisions of the Equal Opportunity Clause, incorporated in the Agreement by reference, as set forth in paragraph 60 1.4 of the regulations of the Secretary of Labor (41 CFR Chapter 60), issued pursuant to Executive Order 11246 of September 24, 1965. Seller is aware and fully informed of its responsibilities under the following and hereby agrees that it shall comply with the requirements of said orders: Rehabilitation Act of 1973 Section 503 (41 CFR 60 741); Vietnam Era Veterans Readjustment Assistance Act of 1974 issued pursuant to Executive Order 11758 dated January 15, 1974 (41 CFR 60 250), as amended; Vocational Rehabilitation Act of 1973 issued pursuant to Executive Order 11758, 29 U.S.C. Section 793, as amended; Utilization of Minority Business Enterprises issued pursuant to Executive Order 11625, 40 U.S.C. Section 486c and 41 CFR Subpart 1 1.1310 2(a) and (b), as amended; Age Discrimination issued pursuant to Executive Order 11141, 29 U.S.C. Chapter 14, as amended; Affirmative Action Vietnam Era Veterans Readjustment Act issued pursuant to Executive Order 11701, 38 U.S.C. Section 2012, 41 CFR Section 60 250, as amended, and Notice of Employee Rights Concerning Payment of Union Dues issued pursuant to Executive Order 13201, effective April 28, 2004 (29 CFR Part/470), as amended.