

# PURCHASE ORDER

| Branch/Plant | 20215 | PO no. | 19653243 |
|---|---|---|---|
| Page 1 of 5 | | Blanket no. | OP |

| VENDOR: | SHIP TO: | BILL TO: |
|---|---|---|
| M.C. ELECTRIC L.L.C.<br>PO BOX 930<br>AMELIA LA 70380<br>PHONE: 985-631-2851  FAX: 985-631-3536<br>EMAIL: ▮▮▮ | COMPASS MINERALS LOUISIANA<br>HWY 83 SOUTH<br>1382 COTE BLANCHE ISLAND<br>FRANKLIN LA 70538 | COMPASS MINERALS LOUISIANA<br>P O BOX 10<br>LYDIA, LA<br>70569-0010 |

Please note that an ORDER CONFIRMATION/ACKNOWLEDGMENT is required on this Purchase Order.

THIS ORDER IS SUBJECT TO TERMS AND CONDITIONS OF PURCHASE AS INCLUDED IN THIS ORDER

| Order Date | Buyer Name | Buyer Telephone | Buyer Fax | Buyer Email | Delivery Instructions |
|---|---|---|---|---|---|
| 8/1/2019 | ▮▮▮ | ▮▮▮ | ▮▮▮ | ▮▮▮ | |

| Payment Terms | GST Registration No. | PST Exemption No. | Currency Code | Freight Terms |
|---|---|---|---|---|
| NET 47 DAYS | | | USD | PREPAID AND ADD |

| Line # | Chg Ord | Item # | Description | Quantity | UOM | Unit Price | Extended Price | Request Date | TAX |
|---|---|---|---|---|---|---|---|---|---|
| 1.000 | 1 | | UNDERGROUND SUPPORT<br>LABOR JOB 5030 | ▮ | EA | ▮ | ▮ | 9/30/19 | |
| | | | Sales Tax | | | | ▮ | | |

| AUTHORIZED SIGNATURE _____ | TAX AMOUNT | ▮ |
|---|---|---|
| | TOTAL AMOUNT THIS ORDER | ▮ |

**EXHIBIT C**

## TERMS AND CONDITIONS OF PURCHASE

### A. UNIVERSAL TERMS APPLICABLE TO ALL PURCHASES

**1. PURCHASE AND SALE; NO JOINT LIABILITY.** Subject to the terms and provisions of this Agreement, Seller agrees to sell the Products and perform the Services described in the attached Purchase Order. Seller shall be deemed to have accepted the Purchase Order upon its execution of an acknowledgment of the Purchase Order, its shipment of Products described in the Purchase Order or its commencement of performance of the Services described in the Purchase Order. Company objects to variations in and additions to any of the terms and conditions of this Agreement, irrespective of the wording of Seller's acceptance, proposal, invoice, shipping receipt or other written materials (Seller's Forms). Any terms in Seller's Forms that add to, vary from, or conflict with this Agreement shall be void. Company may terminate this Agreement or suspend work, in whole or in part, at any time, for any reason, upon written notice to Seller. The obligations of each Company are separate and distinct from one another and are not joint, with each Company's obligations extending only to Purchase Orders issued by such Company.

**2. DEFINITIONS.** (a) Agreement means these Terms and Conditions of Purchase and the Purchase Order that accompanies them or to which they are attached; (b) Company means (i) Compass Minerals America Inc., a Delaware corporation, (ii) Compass Minerals Ogden Inc., a Delaware corporation, (iii) Compass Minerals Louisiana Inc., a Delaware corporation, (iv) Compass Minerals Canada Corp., a Nova Scotia unlimited company, or (v) Compass Minerals Wynyard Inc., a Saskatchewan unlimited company, whichever entity issues the Purchase Order; (c) Products means all goods, materials, chattels, equipment, supplies and machinery to be provided pursuant to this Agreement, including those provided in connection with or incidental to the performance of Services; (d) Purchase Order means the purchase order issued by Company to Seller, as such Purchase Order may be modified pursuant to this Agreement; (e) Seller means the person, partnership, company or corporation providing the Products or Services to Company; and (f) Services means all labor and work to be provided pursuant to this Agreement.

**3. PAYMENT; TAXES.** Unless otherwise provided on the face of the Purchase Order and subject to any conditions to or withholdings of payment set forth in this Agreement or provided by applicable law, payment shall be made within 47 days of the date of Seller's invoice. Seller's invoice shall not be issued earlier than the date of Seller's performance of the Services or shipment of the Products. Any taxes not disclosed on the Purchase Order shall be the responsibility of Seller. Pursuant to paragraph 153(1)(g) of the Canadian Income Tax Act and Regulation 105 (as amended from time to time), a withholding of 15% is required from the payment of fees, commissions and other amounts paid or allocated to a non-resident person in respect of services provided in Canada. Seller shall clearly state on its invoice what portion of services was performed inside Canada and what portion of services was performed outside of Canada. If Seller has received a waiver of or reduction in such withholding from all applicable taxing authorities, Seller must provide such waiver or reduction to Company in order for its payments not to be subject to this withholding.

**4. ELECTRONIC COMMERCE.** Company and Seller may transact electronic exchanges of Purchase Orders and modifications of or cancellations of Purchase Orders. Electronic transmission of a Purchase Order by Company to Seller shall be effective as an offer when it is received on Seller's terminal. The terms of an electronically transmitted Purchase Order shall be those terms and conditions contained in this Agreement regardless of any other terms and conditions.

**5. ORDER MODIFICATIONS.** Upon notice to Seller, Company may make changes in the specifications of the Products ordered before they are manufactured or in the timing, method or place of delivery before they are shipped. If Seller determines that any change made by Company requires an adjustment in the price or compensation to be paid or in the delivery or performance schedule previously agreed to, Seller must notify Company of the adjustment as soon as possible, but in any event within thirty (30) days, after the date on which Company notifies Seller of the change. If Seller does not provide its notice of adjustment in a timely manner, then Seller's claim for adjustment shall be waived. All adjustments agreed to by Company and Seller shall be documented with a revised Purchase Order or other written agreement between the parties.

**6. INDEMNIFICATION.** TO THE EXTENT PERMITTED BY APPLICABLE LAW, SELLER SHALL INDEMNIFY, HOLD HARMLESS AND DEFEND COMPANY AND ITS AFFILIATES AND THEIR RESPECTIVE EMPLOYEES, OFFICERS, DIRECTORS, SHAREHOLDERS, INSURERS, AGENTS AND REPRESENTATIVES (COLLECTIVELY, THE INDEMNIFIED PARTIES), FROM ALL CLAIMS, LIABILITIES, DAMAGES, SUITS, PROCEEDINGS, COSTS AND EXPENSES (INCLUDING REASONABLE ATTORNEYS FEES) (COLLECTIVELY, THE LOSSES), FOR ANY DAMAGE, INJURY, DEATH, LOSS OR DESTRUCTION OF ANY KIND RELATING TO OR ARISING OUT OF THE PERFORMANCE OR BREACH OF THIS AGREEMENT, INCLUDING WITHOUT LIMITATION, LOSS OR DAMAGE TO ANY PROPERTY OR INJURY TO OR DEATH OF ANY PERSON (INCLUDING, WITHOUT LIMITATION, SELLER, ITS EMPLOYEES AND ITS AGENTS), WHETHER ARISING AS A WORKERS COMPENSATION CLAIM OR UNDER THEORIES OF NEGLIGENCE, TORT, STRICT LIABILITY, INTENTIONAL MISCONDUCT, OR FAULT OF ANY KIND. THE PARTIES AGREE THAT THE FOREGOING INDEMNIFICATION SHALL APPLY TO LOSSES INCURRED BY THE PARTIES IN CONNECTION WITH CLAIMS BETWEEN THEM.

**7. INSURANCE.** The indemnification provisions of this Agreement are in addition to, and not in substitution for or a limitation of, these insurance provisions. Unless otherwise agreed in writing by Company, Seller shall comply with the following insurance provisions. Seller shall obtain and maintain, and upon Company's request ensure that its subcontractors maintain, the following insurance coverages with insurers licensed to do business in all jurisdictions in which Seller does business and having an S&P rating of A or above and/or a Best's rating of A10 or above: (a) Worker's Compensation as required under any worker's compensation or similar law in the jurisdiction in which the work under the Purchase Order is performed; (b) Employer's Liability with a limit of at least $1,000,000 on a per accident basis; (c) Commercial General Liability, including coverage for Contractual Liability, Products/Completed Operations Liability, Contractor's Protective Liability (if using subcontractors) and Environmental/Pollution Liability, for bodily injury, personal injury and property damage liability, with Products/Completed Operations Liability to extend for two (2) years following performance of the work under the Purchase Order, each with a limit of at least $1,000,000 on a combined single limit, per occurrence basis; (d) Automobile Liability covering the ownership, maintenance and use of any owned, non-owned and hired automobiles, covering bodily injury and property damage liability, with a limit of at least $1,000,000 on a combined single limit, per accident basis; and (e) Excess Liability, including Employer's Liability, General Liability (including all coverages required under subsection (c) above) and Auto Liability, with a limit of at least $2,000,000 per occurrence on an occurrence form. Seller's self-insured retention and/or deductible for each of the foregoing policies shall not exceed $50,000. In advance of any work in connection with this Agreement and on Company's request, Seller shall provide Company with a certificate of insurance naming Company as an additional insured on each of the policies required by this Agreement (other than Worker's Compensation and Employer's Liability). The failure of Company to object to Seller's failure to furnish a certificate or Company's failure to object to any defect in such certificate, shall not be a waiver of Seller's insurance obligations. Seller hereby: (i) represents and warrants that all insurance described above shall be primary and noncontributory and any other valid and collectible insurance available to Company shall be excess; (ii) waives any rights of recovery or subrogation against Company; (iii) represents and warrants that all retentions and deductibles shall be at the sole expense and for the account of Seller; and (iv) represents and warrants that no amendments or endorsements to the insurance described above need be issued in order for the representations and waivers contained in items (i) through (iii) of this subsection to be effective against Seller and its insurers.

8. **INDEPENDENT CONTRACTOR.** Seller and its contractors, employees, representatives and agents are independent contractors as to Company for all purposes related to and at all times during the term of this Agreement. Seller has responsibility for, and control over, the means and details of performing any services in connection with the production and transport of Products and/or provision of Services. Seller shall control and supervise all performance by such persons. Company shall incur no liability or obligation to employees, agents, representatives, contractors or other parties utilized by Seller, and Seller shall require all such persons to comply with the terms of this Agreement. Company shall not be liable for any act or omission of Seller or any of its employees, representatives, contractors or agents.

9. **ASSIGNABILITY.** Seller may not assign or delegate this Agreement in whole or in part either voluntarily or by operation of law without the express written consent of Company. If Seller assigns this Agreement without Company's consent, Company may at its sole option treat the assignment as null and void.

10. **GOVERNING LAW; CHOICE OF LANGUAGE.** This Agreement shall be construed in accordance with the laws of Delaware if the Company is an entity incorporated or organized in the United States, or construed in accordance with the laws of the Province of Ontario if the Company is an entity incorporated or organized in Canada. The United Nations Convention on the International Sale of Goods shall not apply to the transactions under this Agreement. The parties have expressly required that this Agreement and all documents and notices relating hereto be drafted in English. Les parties aux présentes ont expressément exigé que la présente convention et tous les documents et avis qui y sont afférents soient rédigés en anglais.

11. **ENTIRE AGREEMENT; SEVERABILITY; SECTION HEADINGS.** This Agreement constitutes the entire agreement of the parties and supersedes all previous written or oral understandings and agreements between the parties regarding the subject matter hereof. If any provision of this Agreement (or any portion of any provision) is held to be unenforceable by a court of competent jurisdiction, such provision shall be enforced to the extent permitted by law and the remainder of this Agreement will remain in effect, to be construed in such a manner as to give effect to the intent of the parties to the greatest extent possible. The captions or section headings of this Agreement are for convenience of reference only and shall not be used to interpret the terms of this Agreement or construed as an expression of the intent of the parties.

12. **NOTICES.** All notices required or permitted under this Agreement shall be in writing and shall be deemed effective upon personal delivery, upon delivery by overnight or express mail, or by facsimile (with transmission acknowledgment) to the parties at the vendor or Company's ship to address or facsimile number set forth on the Purchase Order, as applicable, or to such other address or facsimile number as either party shall give the other notice of in writing.

13. **SURVIVAL; REMEDIES.** Sections 6 (Indemnification), 12 (Notices), 16 (Inspection of Products), 17 (Product Warranty), 22 (Ownership of Work Product), 24 (Seller Representations), 25 (Licenses; Warranties), 28 (Inspection of Services), and 29 (Remedies), in addition to this Section and any other provisions that by their content are intended to survive, shall survive the delivery of Products and the performance of Services under the Purchase Order and the termination or expiration of this Agreement. The remedies provided for in this Agreement are in addition to all other remedies available to Company at law or in equity.

B.   **ADDITIONAL TERMS APPLICABLE TO ORDERS OF PRODUCTS**

14. **PURCHASE PRICE.** The purchase price for the Products shall be as set forth on the Purchase Order.

15. **SHIPPING; DELIVERY.** Seller shall deliver the Products DDP (Incoterms 2010) to Company's ship to address identified on the Purchase Order, unless otherwise specified in the Purchase Order. Company may require that Products not delivered within the time specified be shipped by the most expeditious and rapid means of transportation with additional cost of said shipment to Seller's account. Title to the Products shall transfer to Company upon their delivery to Company or Company's payment of the purchase price, whichever is earlier.

16. **INSPECTION OF PRODUCTS.** All Products shall be subject to inspection and test by Company. Company shall have the right to reject Products that in Company's opinion are not fit for the purposes intended by Company, contain defective material, do not meet the Product specifications, or are not in conformity with the Purchase Order. Rejected Products shall be removed by Seller promptly after notification of rejection, at the expense of Seller (including transportation), for credit on the purchase price or correction of defects, at Company's option. Failure on the part of Company to inspect any Products does not relieve Seller from liability if Company determines at a later date that the Products do not meet the requirements.

17. **PRODUCT WARRANTY.** Seller warrants that (a) it is the owner of good and clear title to the Products, (b) the Products shall be new and merchantable and conform to the specifications set forth on the Purchase Order and any statements made on the containers, labels, product data sheets, manuals, advertisements, brochures and other marketing materials for such Products, (c) the Products shall not contain any contaminants from any source, whether resulting from manufacture, transportation or storage of Products, prior to delivery to Company, and (d) the Products shall be free from defects in material and workmanship for a period of one year following delivery to Company or for such longer period as may be set forth in any manufacturer's or Seller's published warranty. If Seller knows of or has reason to know the particular purposes for which Company intends to use the Products, Seller warrants that such goods shall be fit for such particular purposes. All such warranties shall survive inspection, test, acceptance and use and shall run to Company, its successors, assigns, buyers and users. Seller hereby assigns to Company all manufacturer's warranties covering the Products.

C.   **ADDITIONAL TERMS APPLICABLE TO ORDERS OF SERVICES**

18. **PERFORMANCE STANDARDS.** Performance by Seller shall be done in an ethical, professional and workmanlike manner and shall comply with all applicable laws, rules, regulations, licensing requirements, permits, certificates, or other legal requirements. Seller shall have complete control of the Services and shall direct and supervise the Services using its highest and best management practice, skill and attention.

19. **COMPENSATION.** Compensation for the Services shall be at the rates or the prices and in accordance with the schedule set forth in the Purchase Order. Company shall not be required to reimburse Seller for any expenses Seller pays or incurs unless otherwise set forth in the Purchase Order, and any expenses incurred by Seller in connection with this Agreement that are not expressly agreed in writing by the parties to be reimbursable under the Purchase Order shall be Seller's responsibility as overhead. The compensation shall not be subject to escalation for any reason. Any amount on the Purchase Order that is estimated shall constitute a not to exceed amount for purposes of Seller's compensation.