UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| QBE SYNDICATE 1036 | CASE NO. 6:20-CV-00554 |
| VERSUS | JUDGE ROBERT R. SUMMERHAYS |
| COMPASS MINERALS LOUISIANA INC. | MAGISTRATE JUDGE WHITEHURST |

**MEMORANDUM RULING**

The present matters before the Court are two Motions for Summary Judgment filed by plaintiff, QBE Syndicate 1036 [ECF No. 40] and defendant, Compass Minerals Louisiana Inc. [ECF No. 42]. After considering the summary judgment record, the Court rules as follows.

**I.
Background**

This case addresses the scope of the Louisiana Oilfield Indemnification Act ("LOIA") and whether LOIA applies to operations involved in mining salt. On August 15, 2019, Sean Clements was fatally electrocuted while working at the Cote Blanche mine owned and operated by defendant Compass Minerals Louisiana Inc. in St. Mary Parish, Louisiana.[1] Compass is part of a multinational enterprise that owns and operates salt mines in North America and the United Kingdom.[2] Clements was an electrician employed by MC Electric LLC.[3] MC Electric and Fire & Safety Specialists, Inc. ("FSS") performed work for Compass at the Cote Blanche salt mine.[4] FSS provided fire suppression equipment and personnel for the salt mine.[5] At the time of Clements' death, Compass had hired MC Electric to supply "electrical support labor underground at

---

[1] ECF No. 38 at ¶¶ 1, 7.
[2] *Id.* at ¶ 2.
[3] *Id.* at ¶ 7.
[4] *Id.* at ¶ 10.
[5] *Id.*

Compass's salt mine."[6] In connection with that job, Clements was responsible for "running a new dedicated 120 VAC electrical circuit in the portion of the Cote Blanche salt mine referred to as the C – 3 trench."[7] Clements was electrocuted when he "contacted an energized electrical circuit while attempting to install a new circuit for the fire suppression system at the salt mine."[8]

Clements' representatives subsequently filed a wrongful death and survival lawsuit against Compass and FSS in the 16th Judicial District Court, St. Mary Parish, Louisiana.[9] The plaintiffs in that action alleged that FSS' technician erroneously advised Clements that the fire suppression system had been "de-energized" at the time he was to perform work on the system.[10] Plaintiff QBE Syndicate 1036 ("QBE") issued commercial general liability insurance policies to FSS and MC Electric.[11] In August 2020, Compass sent letters to QBE seeking coverage, defense & indemnity under MC Electric & FSS's insurance polices for the state court lawsuit filed by Clements' representatives.[12] Compass based its request for indemnification on an indemnification provision in the purchase orders (the "Purchase Orders") issued to FSS and MC Electric for the work performed by Clements at the mine.[13] Paragraph 7 of the "terms and conditions of purchase" in the Purchase Orders states:

> INDEMNIFICATION. TO THE EXTENT PERMITTED BY APPLICABLE LAW, SELLER SHALL INDEMNIFY, HOLD HARMLESS AND DEFEND COMPANY AND ITS AFFILIATE AND THEIR RESPECTIVE EMPLOYEES, OFFICERS, DIRECTORS, SHAREHOLDERS, INURERS, AGENTS AND REPRESENTATIVES (COLLECTIVELY, THE INDEMNIFIED PARTIES), FROM ALL CLAIMS, LIABILITIES, DAMAGES, SUITS, PROCEEDINGS, COSTS AND EXPENSES (INCLUDING REASONABLE ATTORNEYS FEES) (COLLECTIVELY, THE LOSSES), FOR ANY DAMAGE, INJURY, DEATH,

---

[6] *Id.* at ¶ 9.
[7] *Id.*
[8] *Id.*
[9] ECF No. 38-1.
[10] *Id.*
[11] ECF No. 38 at ¶¶ 11-12.
[12] Id. at ¶¶ 16-17: ECF Nos. 38-6 and 38-7.
[13] ECF No. 38 at ¶¶ 10, 14; ECF Nos. 38-2 and 38-3.

> THE PERFORMANCE OR BREACH OF THIS AGREEMENT, INCLUDING WITHOUT LIMITATION, LOSS OR DAMAGE TO ANY PROPERTY OR INJURY TO OR DEATH OF ANY PERSON (INCLUDING, WITHOUT LIMITATION, SELLER, ITS EMPLOYEES, AND ITS AGENTS), WHETHER ARISING AS A WORKERS COMPENSATION CLAIM OR UNDER THEORIES OF NEGLIGENCE, TORT, STRICT LIABILITY, INTENTIONAL MISCONDUCT, OR FAULT OF ANY KIND. THE PARTIES AGREE THAT THE FOREGOING INDEMNIFICATION SHALL APPLY TO LOSSES INCURRED BY THE PARTIES IN CONNECTION WITH CLAIMS BETWEEN THEM.[14]

QBE then filed the present action seeking declaratory relief that Compass is not entitled to indemnification based on the MC Electric and FSS purchase orders. Specifically, QBE contends that the indemnification provisions in the purchase orders are unenforceable under the LOIA. Compass and QBE filed the present cross-motions for summary judgment addressing the applicability of the LOIA. QBE contends that, as a matter of law, the LOIA applies to the Purchase Agreements and thus invalidates the indemnification provision in paragraph 7 of the Purchase Orders. Compass contends that the LOIA does not apply to the Purchase Orders, and that the indemnification provision in paragraph 7 of those orders is enforceable.

## II.
### SUMMARY JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."[15] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[16] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."[17] As summarized by the Fifth Circuit:

---

[14] ECF No. 38 at ¶ 14.
[15] Fed. R. Civ. P. 56(a).
[16] *Id.*
[17] *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010).

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[18]

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."[19] "Credibility determinations are not part of the summary judgment analysis."[20] Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof."[21]

### III.
### LAW AND ANALYSIS

The Louisiana Legislature enacted the LOIA to "protect Louisiana oilfield contractors from overreaching principals who force the contractors through indemnity agreements to bear the risk of the principal's negligence."[22] The intent of the LOIA was "to declare null and void and against public policy of the state of Louisiana any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault

---

[18] *Lindsey v. Sears Roebuck and Co.,* 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).
[19] *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party).
[20] *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).
[21] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex v. Catlett*, 477 U.S. 317, 322 (1986)).
[22] *Roberts v. Energy Dev. Corp.*, 104 F.3d 782, 784 (5th Cir. 1997).

(strict liability) on the part of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee."[23] The LOIA provides that "[a]ny provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity . . . ."[24]

The act applies to:

> any agreement or understanding, written or oral, concerning any operations related to the exploration, development, production, or transportation of oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, including but not limited to drilling, deepening, reworking, repairing, improving, testing, treating, perforating, acidizing, logging, conditioning, altering, plugging, or otherwise rendering services in or in connection with any well drilled for the purpose of producing or excavating, constructing, improving, or otherwise rendering services in connection with any mine shaft, drift, or other structure intended for use in the exploration for or production of any mineral, or an agreement to perform any portion of any such work or services or any act collateral thereto, including the furnishing or rental of equipment, incidental transportation, and other goods and services furnished in connection with any such service or operation.[25]

Whether LOIA applies to an agreement turns on the two-part test articulated in *Transcontinental Gas Pipe Line Corp. v. Trans. Ins. Co.*:

> First, there must be an agreement that "pertains to" an oil, gas or water well. If the contract does not pertain to a well, the inquiry ends. Only if we determine that the contract has the required nexus to a well may we proceed to the second step of the process, examination of the contract's involvement with "operations related to the exploration, development, production, or transportation of oil, gas, or water." . . . ***Therefore, if (but only if) the agreement (1) pertains to a well, and (2) is related to exploration, development, production, or transportation of oil, gas, or water, will the Act invalidate any indemnity provision contained in or collateral to that agreement.*** [26]

---

[23] La. Rev. Stat. § 9:2780(A).
[24] La. Stat. Ann. § 9:2780(B).
[25] La. Rev. Stat. § 9:2780(C).
[26] 953 F.2d 985, 991 (5th Cir. 1992) (emphasis added).

An agreement "pertains to" a well under the LOIA if the services provided under the agreement are necessary to sustain the manpower or equipment needed to produce oil and gas from wells.[27]

The agreement here does not satisfy *Transcontinental Gas Pipe Line*'s two-part test. First, the agreement does not pertain to "an oil, gas or water well."[28] MC Electric and FSS provided services under the Purchase Order at issue in connection with mining operations at the Cote Blanche salt mine, and it is undisputed that these operations did not involve nor did the services provided pertain to a well. Accordingly, under *Transcontinental Gas Pipe Line*, "the inquiry ends."[29]

QBE, however, argues that the LOIA is not limited to agreements pertaining to oil, gas, and water wells. QBE's argument focuses on one clause in the LOIA's anti-indemnification provision: agreements pertaining to "drilling for minerals which occur in a solid, liquid, gaseous, or other state . . . ."[30] QBE argues that the term "minerals" in this provision covers all minerals, not just oil, gas, or water.[31] Since salt is a mineral, QBE argues that salt mining is covered under this provision. QBE further argues that the services provided by MC Electric and FSS under the Purchase Order at issue pertain to "drilling" operations at the Cote Blanche Salt Mine.[32] Specifically, QBE argues that Compass mines salt using a "drill-and-blast" mining method:

> The drill and blast mining method begins by cutting into the rock salt face using specialized equipment. We then drill holes into the face and use explosives to break the salt into large rocks. Front-end loaders and trucks load and haul the salt to a crusher where it is reduced in size, loaded onto a conveyor belt and transported to

---

[27] *See Broussard v. Conoco, Inc.*, 959 F.2d 42, 43-45 (5th Cir. 1992) (holding a contract for a caterer to feed the production workers and maintain their living quarters pertained to a well and finding a "'functional nexus' arises from the fact that production employees are unquestionably necessary for production from a well").
[28] 953 F.2d. at 991.
[29] *Id*.
[30] La. Stat. Rev. Stat. § 9:2780(B).
[31] ECF No. 40-1 at 17-18.
[32] *Id*. at 14.

a mill. The mill screens and crushes the rock salt to the customary size before the salt is hoisted to the surface.[33]

Because drilling is used at one stage of the salt mining process, QBE argues that the agreements at issue pertain to "drilling for minerals," and therefore are subject to the LOIA.

The Court agrees with QBE that the term "minerals" in the LOIA is broader than oil, gas, and water. In *Torres v. McDermott Inc.*, the Fifth Circuit held that the term "drilling for minerals" was not limited to oil, gas, and water, but included any "mineral."[34] Accordingly, the court held that the LOIA applied to an agreement pertaining to drilling for sulphur through the "Frasch process."[35] However, QBE's position cannot rest on the fact that salt is a mineral. Rather, QBE must establish that the mining practices used by Compass at the Cote Blanche salt mine amount to "drilling for minerals," as that phrase is used in the LOIA. The language of the statute and the summary judgment record do not support QBE's position that Compass' mining activities fall under the LOIA.

The words used in a statute cannot be construed in a vacuum.[36] Their meaning must be determined by considering their context and the text of the statute as a whole.[37] QBE improperly construes the word "drilling" in section 9:2780(B) to cover any activity involving a drill, from a large offshore oil and gas drilling platform down to an industrial hand-operated drill. This argument essentially eliminates *Transcontinental Gas Pipe Line*'s threshold requirement that the

---

[33] ECF No. 38 at ¶ 4.
[34] 12 F.3d. 521 (5th Cir. 1994).
[35] *Id*. at 523.
[36] *Maracich v. Spears,* 570 U.S. 48, 65 (2013) ("'[I]nterpretation of a phrase of uncertain reach is not confined to a single sentence when the text of the whole statute gives instruction as to its meaning'").
[37] *Id.; Davis v. Michigan Dept. of Treasury,* 489 U.S. 803, 809 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme"); ANTONIN SCALIA & BRYAN GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 56 (2012) ("words are given meaning by their context, and context includes the purpose of the text.")

agreement at issue pertain to a well.[38] To the contrary, the LOIA's use of the phrase "drilling for"—and in particular the use of the preposition "for"—suggests drilling performed to create a well for the exploration and production of minerals.[39] Considering the text of the LOIA as a whole, the term "drilling" is closely associated with the drilling of a well in connection with the exploration for minerals—whether oil, gas, water, or other minerals. For example, in the LOIA's definition of the term "agreement," the statute refers to "drilling . . . in connection with any *well* drilled for the purpose of producing or excavating, constructing, improving, or otherwise rendering services in connection with any mine shaft, drift, or other structure intended for use in the exploration for or production of any mineral…."[40] Moreover, the first clause of the LOIA's anti-indemnification provision—"an agreement pertaining to a well for oil, gas, or water"—appears to refer to an existing well.[41] In contrast, the plain meaning of the clause relied on by QBE—"drilling for minerals"—is the process of drilling or creating a well for purposes of mineral exploration or production.[42]

The drilling involved in mining salt at the Cote Blanche mine does not involve the creation of a well for purposes of exploring for or producing salt. Rather, holes are drilled in the face of a salt wall, presumably for purposes of loading explosive charges into the drill-holes and breaking that wall into smaller pieces.[43] The drilling involved here is thus one step in a lengthier process of

---

[38] 953 F.2d at 991.
[39] See, e.g., *Mangham v. S. Carbon Co.*, 169 La. 935, 936, 126 So. 429, 430 (1930) (observing that "the company began ***drilling for*** oil, and, in 4 months, completed ***a well*** which produced gas in paying quantities") (emphasis added); *State ex rel. Pierce v. Carruth*, 19 La. App. 112, 113, 139 So. 514, 515 (1932) ("Putting up the equipment for drilling purposes, and particularly actual drilling for oil or gas, constitute, we think, 'labor or service in the operation of any oil or gas well or wells' as provided for in the statute.")
[40] La. Rev. Stat. § 9:2780(C) (emphasis added).
[41] *Id.*
[42] *Id.*
[43] ECF No. 38 at ¶ 4.

breaking down a salt wall for further processing.[44] Simply put, Compass does not "drill for" salt by employing a "drill-and-blast" mining method to break down a salt wall, nor does this mining method involve the creation of a well.

This reading of the LOIA is consistent with the *Torres* case cited by QBE. While *Torres* construed the term "minerals" in the LOIA broadly to cover agreements involving the exploration and production of sulphur, the drilling at issue in that case, unlike the present case, involved the drilling of a well. Specifically, the defendant in that case performed "drilling work where the Frasch drilling process will be used."[45] As another court has explained, "Sulphur is extracted from the ground by the Frasch process, a drilling and extraction process which brings sulphur to the surface in liquid form. ***This process is much more similar to oil and gas production***."[46] Accordingly, the drilling activities at issue in Torres satisfied the threshold requirement under *Transcontinental Gas Pipe Line* that the agreement pertain to a well.

In sum, the term "drilling for minerals" in the LOIA should be construed as referring to the drilling of a well. Because it is undisputed that the purchase orders at issue here did not pertain to a well, the inquiry ends: the LOIA does not invalidate the indemnification provisions in the purchase orders issued to MC Electric and FSS.[47]

---

[44] *Id*.

[45] 12 F.3d. at 524.

[46] *River Rouge Mins., Inc. v. Energy Res. of Minnesota*, 331 So. 2d. 878, 880 (La.App. 2 Cir. 1976) (emphasis added).

[47] The words "drilling for minerals" is not ambiguous when the words are given their plain meaning and construed in context. *See Contender Farms, L.L.P. v. U.S. Dept. of Agriculture*, 779 F.3d. 258, 269 (5th Cir. 2015). However, the legislative history of the LOIA further supports this construction of the term "drilling for minerals." As explained by Compass in its Motion for Summary Judgment, the original preamble of the LOIA referred to "agreements pertaining to wells for oils, gas, or water, or *mines for minerals*." ECF No. 42-2. The text was amended to delete the term "mines" and substitute the term "drilling." *Id*. at 22. The explanation for this change was that the LOIA was intended to apply to "the oil industry only, be [sic] deleting reference to mines and referring instead to 'drilling for minerals'." *Id*.

## IV.
### CONCLUSION

For the reasons stated herein, the Motion for Summary Judgment filed by Compass [ECF No. 42] is GRANTED. The Motion for Summary Judgment filed by QBE [ECF No. 40] is DENIED.

THUS DONE in Chambers on this 16th day of December, 2022.

_____
ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE